EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Jesús M. Torrech Rodríguez<br><br>Peticionario | Certiorari<br><br>2026 TSPR 59<br><br>218 DPR ___ |

Número del Caso: CC-2025-0105

Fecha: 3 de junio de 2026

Tribunal de Apelaciones:

    Panel Especial

Representante legal de la parte peticionaria:

    Lcda. Wanda Tamara Castro Alemán
    Sociedad para Asistencia Legal

Oficina del Procurador General:

    Hon. Omar Andino Figueroa
    Procurador General

    Lcdo. Frank A. Rosado Méndez
    Subprocurador General

    Lcda. Laura W. Robles Vega
    Procuradora General Auxiliar

Materia: Procedimiento Criminal – El derecho a una notificación adecuada requiere que el Estado consigne en el pliego acusatorio la alegación específica y dirigida a la duplicidad de la pena del Art. 7.03 de la Ley de Armas que pretende se imponga.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Jesús M. Torrech Rodríguez<br><br>Peticionario | CC-2025-0105 | *Certiorari* |

Opinión del Tribunal emitida por la Jueza Asociada Rivera Pérez.

En San Juan, Puerto Rico, a 3 de junio de 2026

El recurso ante nuestra consideración surge de la imposición de una pena agravada al amparo del Art. 7.03 de la Ley de Armas, *infra*, vigente al momento de los hechos. Concretamente, el foro primario duplicó las penas correspondientes a infracciones a los Arts. 5.04 y 5.15 de dicho estatuto. No obstante, el Ministerio Público no dio notificación formal al acusado de su intención de activar la disposición que permite la duplicidad de dichas penas: el Art. 7.03 de la Ley de Armas, *infra*. En consecuencia, debemos determinar si, conforme a la línea de *Apprendi v. New Jersey*, *infra*, y su recepción en nuestro ordenamiento, los supuestos fácticos del Art. 7.03, *infra*, constituyen hechos adicionales que amplían la exposición penal autorizada por el veredicto del jurado y, por consiguiente, activan las garantías constitucionales de notificación adecuada y juicio por

jurado.[1] Respondemos dicha interrogante en la afirmativa. En función de ello, determinamos que el derecho a una notificación adecuada requiere que el Estado consigne en el instrumento procesal mediante el cual se notifican los cargos al amparo de la Ley de Armas, *infra*, una alegación específica y dirigida a la duplicidad del Art. 7.03, *infra*, que pretende levantar.

Por los fundamentos expuestos a continuación, revocamos los dictámenes de los foros recurridos en cuanto a la duplicidad de la pena impuesta al peticionario.

## I

Por hechos acaecidos el 14 de julio de 2019, en el municipio de Arecibo, el Ministerio Público presentó varias acusaciones contra el señor Jesús M. Torrech Rodríguez (señor Torrech Rodríguez o peticionario). Se le imputó que, en concierto y común acuerdo con otras dos personas, cometió el delito de robo agravado (Art. 190(c) y (d) de la Ley Núm. 146-2012, según enmendada, Código Penal de Puerto Rico, 33 LPRA sec. 5260 (Código Penal), ambos cargos a modo de cooperador. Además, se le imputó infringir el Art. 5.04 (portación y uso de armas de fuego sin licencia), así como

---

[1] Aclaramos que, aunque la Ley de Armas 404-2000, *supra*, a la que hacemos referencia a lo largo de esta Opinión fue derogada por la Ley Núm. 168 de 11 de diciembre de 2019, Ley de Armas de Puerto Rico de 2020, 25 LPRA sec. 461 *et seq.*, la primera es el estatuto aplicable a los hechos de este caso por ser la vigente al momento de la comisión de los actos delictivos. En todo caso, la controversia que nos ocupa conserva plena pertinencia bajo el estatuto actual, pues el Art. 6.01 de la Ley de Armas de 2020, 25 LPRA sec. 466, reproduce la misma redacción y efecto jurídico del antiguo Art. 7.03 de la Ley de Armas, *infra*, respecto a la duplicación de la pena. Por consiguiente, el análisis constitucional que hoy realizamos resulta igualmente aplicable bajo ambos regímenes normativos.

tres cargos, a modo de cooperador, por transgredir el Artículo

5.15 (disparar o apuntar armas) de la Ley Núm. 404-2000, según

enmendada, Ley de Armas de Puerto Rico, 25 LPRA sec. 458c y

25 LPRA sec. 458n (Ley de Armas). Las referidas acusaciones

leían como sigue:

**Art. 190(c) del Código Penal,** *supra***, (C BD2019G0249)**

El referido acusado, JES[Ú]S M TORRECH RODR[Í]GUEZ, actuando en concierto y mutuo acuerdo con ALEJANDRO MODESTO CASTRO MEL[É]NDEZ Y JUAN EUGENIO LEBR[Ó]N GONZ[Á]LEZ, allá en o para el día 14 de JULIO de 2019, y en ARECIBO, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de ARECIBO, ilegal, voluntaria y criminalmente, se apropió de un teléfono celular marca Samsung, Galaxy S9+, color violeta, perteneciente a KATIE DEVLIN, sustrayéndolo de la persona en su inmediata presencia y contra su voluntad, por medio de la violencia y/o intimidación, infligiendo daño físico a la víctima mediante golpe en la cabeza con un arma de fuego, y en un edificio ocupado donde la víctima tenía expectativa razonable de intimidad.

**Art. 190(d) del Código Penal,** *supra***, (C BD2019G0250)**

El referido acusado, JES[Ú]S M TORRECH RODR[Í]GUEZ, actuando en concierto y mutuo acuerdo con ALEJANDRO MODESTO CASTRO MEL[É]NDEZ Y JUAN EUGENIO LEBR[Ó]N GONZ[Á]LEZ, allá en o para el día 14 de JULIO de 2019, y en ARECIBO, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de ARECIBO, ilegal, voluntaria y criminalmente, se apropió de un teléfono marca iPhone, modelo XSMax, color oro, perteneciente a KALEB SMITH, sustrayéndolo de la persona en su inmediata presencia y contra su voluntad, por medio de la violencia y/o intimidación, hecho ocurrido en un edificio ocupado o donde estaba la víctima y/o cualquier otro lugar donde la víctima tenía una expectativa razonable de intimidad.

**Art. 5.04 de la Ley de Armas,** *supra***, (C LA2019G0173)**

El referido acusado, JES[Ú]S M. TORRECH RODR[Í]GUEZ, actuando en concierto y mutuo acuerdo con ALEJANDRO MODESTO CASTRO MELÉNDEZ Y JUAN EUGENIO LEBR[Ó]N GONZ[Á]LEZ, allá en o para el día 14 de JULIO de 2019, y en ARECIBO, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de ARECIBO, ilegal, voluntaria y criminalmente, transportó y/o portó un arma de fuego, UN ARMA COLOR NEGRO Y ROJO, sin tener una licencia de armas para portar armas bajo la Ley. EL ARMA NO FUE OCUPADA Y FUE UTILIZADA EN LA COMISI[Ó]N DEL DELITO DE ROBO AGRAVADO.[2]

---

[2] Anejo II del recurso, págs. 7-8.

**Art 5.15 de la Ley de Armas,** *supra*, **(C LA2019G0174)**

El referido acusado, JES[Ú]S M. TORRENCH RODR[Í]GUEZ, actuando en concierto y mutuo acuerdo con ALEJANDRO MODESTO CASTRO MEL[É]NDEZ Y JUAN EUGENIO LEBR[Ó]N GONZ[Á]LEZ, allá en o para el día 14 de JULIO de 2019, y en ARECIBO, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de ARECIBO, ilegal, voluntaria y criminalmente, apuntó a BENJAM[Í]N DEVLIN con un arma de fuego color negro y rojo, en un sitio público o en cualquier otro sitio donde hubo alguna persona que pudo sufrir daño, en la comisión del delito de Robo Agravado.[3]

**Art. 5.15 de la Ley de Armas,** *supra*, **(C LA2019G0175)**

El referido acusado, JES[Ú]S M. TORRENCH RODR[Í]GUEZ, actuando en concierto y mutuo acuerdo con ALEJANDRO MODESTO CASTRO MEL[É]NDEZ Y JUAN EUGENIO LEBR[Ó]N GONZ[Á]LEZ, allá en o para el día 14 de JULIO de 2019, y en ARECIBO, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de ARECIBO, ilegal, voluntaria y criminalmente, apuntó a KATIE DEVLIN con un arma de fuego color negro y rojo, en un sitio público o en cualquier otro sitio donde hubo alguna persona que pudo sufrir daño, en la comisión del delito de Robo Agravado.[4]

**Art. 5.15 de la Ley de Armas,** *supra*, **(C LA2019G0176)**

El referido acusado, JES[Ú]S M. TORRENCH RODR[Í]GUEZ, actuando en concierto y mutuo acuerdo con ALEJANDRO MODESTO CASTRO Y JUAN EUGENIO LEBR[Ó]N GONZ[Á]LEZ, allá en o para el día 14 de julio de 2019, y en ARECIBO, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de ARECIBO, ilegal, voluntaria y criminalmente, apuntó a [Á]NGEL ANTONIO SU[Á]REZ V[É]LEZ con un arma de fuego color negro y rojo, en un sitio público o en cualquier otro sitio donde hubo alguna persona que pudo sufrir daño, luego de la comisión de un delito de Robo Agravado.[5]

Luego de varias incidencias procesales, el 26 de noviembre de 2019, el Tribunal de Primera Instancia registró una alegación de no culpabilidad y señaló el juicio por jurado para el 16 de diciembre de 2019.

El juicio en su fondo fue celebrado contra el peticionario junto al coacusado, Alejandro M. Meléndez (señor Castro Meléndez).[6] De la prueba desfilada surge que el señor Castro Meléndez y el ahora fenecido Sr. Eugenio Lebrón

---

[3] Íd., págs. 9-10
[4] Íd., págs. 11-12.
[5] Anejo II del recurso de *certiorari*, págs. 13-14.
[6] Según surge del expediente, el coacusado, Juan Eugenio Lebrón González, falleció antes de la celebración del juicio.

González (señor Lebrón González) irrumpieron en la residencia de la Sra. Katie Devlin y el Sr. Benjamin Devlin (matrimonio Devlin), apuntándoles con un arma de fuego y requiriéndoles dinero. Mientras se desarrollaba el asalto, llegaron unos conocidos del matrimonio Devlin a la residencia. A raíz de ello, los asaltantes emprendieron la huida hacia el vehículo en el cual habían llegado y le apuntaron con el arma al Sr. Ángel Antonio Suárez Vélez (señor Suárez Vélez), persona que llegó al lugar mientras se suscitaban los hechos. En el curso de su retirada, los asaltantes fueron interceptados y detenidos por los oficiales del orden público. El señor Torrech Rodríguez fue identificado como el conductor del vehículo en el que huyeron los asaltantes luego de cometer los hechos.

Como resultado, el 16 de diciembre de 2022, el Jurado encontró culpable al peticionario en todos los cargos imputados. El 3 de mayo de 2023, el Tribunal de Primera Instancia dictó *Sentencia* en contra del señor Torrech Rodríguez.[7] Mediante esta, condenó al peticionario a cumplir 45 años de reclusión. Esto es, 10 años por cada uno de los cargos, concurrentes entre sí, por violación al Art. 190, incisos c y d del Código Penal, *supra*. Además, la pena fija de 10 años establecida en el Art. 5.04 de la Ley de Armas fue duplicada a 20 años al amparo del Art. 7.03 de la misma Ley. En los tres cargos por el Art. 5.15 de la Ley de Armas, *supra*, le impuso la mitad de la pena (2.5 años) por haber sido

---

[7] Anejo XII del recurso de *certiorari*, págs. 63-64.

declarado culpable como cooperador, pero la duplicó a 5 años, también aplicando el Art. 7.03 de la Ley de Armas, *supra*, para un total de 15 años. En total, el Art. 7.03 de la Ley de Armas, *supra*, añadió 17.5 años de reclusión por ambos delitos del referido estatuto.

En desacuerdo, el peticionario presentó una *Apelación Criminal* ante el Tribunal de Apelaciones.[8] En lo pertinente, señaló que el foro de instancia había errado al duplicar, al amparo del Art. 7.03 Ley de Armas, *supra*, las penas correspondientes a los delitos contemplados en los Arts. 5.04 y 5.15 de dicho cuerpo legal. Lo anterior, se debió a que las acusaciones de los referidos delitos no incluyeron los elementos necesarios para notificar el agravante, en violación al debido proceso ley consagrado en el Art. II, Secs. 7 y 11 de la Constitución de Puerto Rico, LPRA, Tomo 1, y las Emdas. V y XIV de la Constitución de los Estados Unidos, LPRA, Tomo 1.

El 27 de enero de 2025, el foro intermedio notificó una *Sentencia* en la que confirmó el dictamen apelado.[9] Según dicho foro, el análisis del Art. 7.03 de la Ley de Armas, *supra*, mostraba que la intención del legislador era duplicar las penas en los casos de reincidencia o en los casos en que se utilizara un arma de fuego en la comisión del delito y, como resultado de tal violación, alguna persona sufriera daño físico o mental. Señaló, además, que dicha imposición

---

[8] Anejo XIII del recurso de *certiorari*, págs. 67-69.
[9] Véase caso núm. KLAN202300429.

estatutaria era obligatoria y no discrecional. En consecuencia, resolvió que el Ministerio Público no estaba obligado a incluir en la acusación, por el Art. 5.04 y el Art. 5.15 de la Ley de Armas, *supra*, el hecho de que alguna persona hubiese sufrido daño físico, ya que ese aspecto no era elemento del delito. Por el contrario, se trataba de una directriz estatutaria dirigida al juez al momento de imponer la sentencia.

Inconforme, el 21 de febrero de 2025, el peticionario acudió ante esta Curia mediante una *Petición de Certiorari*, en la cual planteó el error siguiente:

> Cometió error el Tribunal de Apelaciones al concluir que el Ministerio Público no estaba obligado a incluir en las acusaciones las alegaciones de hechos necesarios para aplicar el agravamiento de las penas establecido al amparo del Art. 7.03 de la Ley de Armas de 2000, en violación al derecho del peticionario a la adecuada notificación de los cargos en su contra, a juicio ante jurado y al debido proceso de ley, garantizados por la[s] secciones 7 y 11 de la Constitución de Puerto Rico y por las Enmiendas Sexta y Decimocuarta de la Constitución de los Estados Unidos.

Luego de expedido el recurso, el 13 de agosto de 2025, la Oficina del Procurador General de Puerto Rico (Procurador General) presentó su alegato en oposición.[10]

Contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II

### A. Debido proceso de ley

La Sec. 7 del Art. II de nuestra Constitución, así como en las Enmiendas Quinta y Decimocuarta de la Constitución federal, consagran la garantía del debido proceso de ley.

---

[10] El 20 de junio de 2025, el señor Torrech Rodríguez presentó *Alegato del Peticionario*.

*Pueblo v. Santiago Cruz y en interés menor FLR*, 205 DPR 7, 22 (2020). Esta norma cardinal estructura la relación entre el Estado y el individuo, de manera que actúa como límite insoslayable al ejercicio del poder gubernamental. En virtud de ella, la ciudadanía queda protegida frente a intervenciones estatales arbitrarias o injustificadas. *Pueblo v. Montero Luciano*, 169 DPR 360, 370 (2006).

El debido proceso de ley se manifiesta en su vertiente sustantiva y procesal. *Pueblo v. Pagán Rojas et al.*, 187 DPR 465, 478-479 (2012). En su dimensión procesal, el Estado viene obligado a garantizar que la interferencia con los intereses de libertad y de propiedad del individuo solo ocurran mediante un procedimiento justo y equitativo. *Com. Elect PPD v. CEE et al.*, 205 DPR 724, 743 (2020); *Pueblo v. Montero Luciano*, *supra*, pág. 371.

### i.   *Notificación adecuada*

En materia penal, y en aras de asegurar la efectividad de la garantía antes mencionada, nuestro andamiaje procesal incorpora diversas protecciones orientadas a asegurar que el acusado disponga de la información necesaria para preparar y ejercer plenamente su defensa. *Pueblo v. Rodríguez González*, 202 DPR 258, 271 (2019). Entre ellas, la "adecuada notificación" es uno de esos componentes básicos que comprenden el debido proceso de ley. Íd., pág. 272. Concretamente, el Art. II, Sec. 11 de nuestra Carta Magna dispone que "[e]n todos los procesos criminales, el acusado disfrutará del derecho […] **a ser notificado de la naturaleza**

**y causa de la acusación recibiendo copia de la misma"**. Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1. (Negrillas suplidas). De aquí que nuestro ordenamiento constitucional impone, desde las etapas iniciales del proceso penal, el deber de informar al imputado la naturaleza y causa de la acusación formulada en su contra.

Así también lo ha reconocido el Tribunal Supremo de los Estados Unidos al señalar en *Cole v. State of Ark.*, 333 US 196, 201 (1948), que "[n]o principle of procedural due process is more clearly established than that notice of the specific charge", por lo que constituye una de las garantías constitucionales de cada acusado durante un proceso criminal ante todos los tribunales, federales y estatales.

Debe notarse que este mandato de rango constitucional exige que la persona acusada esté informada adecuadamente de la naturaleza y extensión del delito imputado. *Pueblo v. Vélez Rodríguez*, 186 DPR 621, 627 (2012). Tal exigencia se materializa mediante la inclusión en la denuncia o pliego acusatorio de los hechos esenciales constitutivos de delito y de los cargos específicos que se le imputan. *Pueblo v. Rivera Rivera*, 145 DPR 366, 378 (1998).

De conformidad, nuestras Reglas de Procedimiento Criminal, en su Regla 34 (a), *infra*, integran la acusación, en los casos de delitos graves, o la denuncia como el instrumento procesal para notificar adecuadamente a la persona acusada del delito que se le imputa. *Pueblo v. Vélez Rodríguez, supra*, pág. 628; *Pueblo v. Montero Luciano, supra*.

La acusación, se define como la "alegación escrita hecha por un fiscal al Tribunal de Primera Instancia en la cual se imputa a una persona la comisión de un delito". Regla 34 (a) de Procedimiento Criminal, 34 LPRA Ap. II.

Por su parte, la Regla 35 de Procedimiento Criminal, Íd., delimita los elementos de la acusación. Su inciso (c) establece que la acusación deberá contener "[u]na exposición de los hechos esenciales constitutivos del delito, redactada en lenguaje sencillo, claro y conciso, y de tal modo que pueda entenderla cualquier persona de inteligencia común". Íd.

A tono con lo anterior, desde temprano hemos resuelto que, para cumplir con el mandato constitucional y estatutario, no es necesario emplear un lenguaje estereotipado, técnico o talismánico. *Pueblo v. Calviño Cereijo*, 110 DPR 691, 694 (1981). Sin embargo, ello no releva al Estado de su obligación fundamental de consignar en la acusación todos los elementos constitutivos del delito que pretende probar. Según advierte la profesora Dora Nevares Muñiz, ello es indispensable para que pueda recaer una convicción válida, pues si falta uno de ellos, el pliego acusatorio será insuficiente. D. Nevares-Muñiz, *Sumario de derecho procesal penal puertorriqueño*, 10ma ed. rev., San Juan, Instituto para el Desarrollo del Derecho, 2014, pág. 119. Incluso, debe recordarse que la prueba no corrige la insuficiencia en el pliego acusatorio por razón de un defecto sustancial. Íd.

En resumen, un pliego insuficiente no garantiza que el acusado conozca con precisión la imputación y pueda preparar

su defensa. **De aquí el entendimiento básico de que nadie puede ser juzgado, mucho menos privado de su libertad, por hechos que no le han sido debidamente notificados.**

*ii. Derecho a juicio por jurado*

Todo imputado de un delito grave tiene derecho a ser juzgado por un jurado imparcial. *Pueblo v. Centeno*, 208 DPR 1, 10 (2021). Esta garantía se encuentra consagrada en la Sexta Enmienda de la Constitución de Estados Unido, Enmda. VI, Const. EE.UU., LPRA, Tomo 1. El derecho fundamental a juicio por jurado es extensible a los estados y a Puerto Rico. *Pueblo v. Torres Rivera II*, 204 DPR 288, 296 (2020). Por su parte, la Constitución del Estado Libre Asociado de Puerto Rico en su Art. II, Sec. 11, consagra el derecho a juicio por jurado al disponer lo siguiente:

> En los procesos por delito grave el acusado tendrá derecho a que su juicio se ventile ante un jurado imparcial compuesto por doce vecinos del distrito, *quienes podrán rendir veredicto por mayoría de votos* en el cual deberán concurrir no menos de nueve. Art. II, Sec. 11, Const. Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1. (Énfasis suplido).

La función primordial del jurado consiste en adjudicar los hechos del caso mediante la valoración de la prueba admitida en juicio y, conforme a las instrucciones del tribunal, aplicar el derecho para emitir el veredicto correspondiente, correspondiéndole, en última instancia, la determinación de culpabilidad o inocencia del acusado. *Pueblo v. Santana Vélez*, 177 DPR 61, 65-66 (2009). Aunque el veredicto del jurado resuelve la cuestión de responsabilidad penal del acusado, la determinación de la pena tras el veredicto de culpabilidad le corresponde al tribunal, pues el

derecho constitucional a juicio por jurado no se extiende a la etapa de imposición de sentencia. Íd, pág. 66.

### B. *Apprendi v. New Jersey*, *infra*, y su progenie

Los principios acusatorios, arraigados en nuestro ordenamiento procesal, adquieren una dimensión adicional a partir del precedente federal de *Apprendi v. New Jersey*, 530 US 466 (2000) (*Apprendi*) y su progenie. En *Apprendi v. New Jersey*, *supra,* resuelto en el año 2000, el Tribunal Supremo federal resolvió que, salvo la reincidencia, toda circunstancia que aumente la pena máxima del delito más allá del límite autorizado por el veredicto debe ser sometida al jurado y probada más allá de duda razonable. Con ello, el Alto foro federal rechazó la práctica de permitir que el juez o la jueza, en sentencia, encontrara hechos adicionales para agravar la pena. Ello pues, conforme al razonamiento del Tribunal, dicho esquema priva al jurado de determinar un hecho que expone al acusado a una pena mayor a la que podría recibir si fuera castigado únicamente conforme a los hechos reflejados en el veredicto. *Apprendi v. New Jersey*, *supra.* Por consiguiente, la norma quedó formulada en términos sustantivos: **si el hecho incrementa la pena más allá del máximo autorizado por el veredicto, ese hecho debe tratarse como un elemento del delito.**

Así pues, el enfoque dejó de ser uno formal o nominal y pasó a ser uno funcional, donde **lo determinante es el efecto punitivo del hecho, y no su denominación legislativa.** En palabras del propio Tribunal:

> **It does not matter how the required finding is labeled, but whether it exposes the defendant to a greater punishment than that authorized by the jury's verdict,** as does the sentencing "enhancement" here. The degree of culpability the legislature associates with factually distinct conduct has significant implications both for a defendant's liberty and for the heightened stigma associated with an offense the legislature has selected as worthy of greater punishment. **That the State placed the enhancer within the criminal code's sentencing provisions does not mean that it is not an essential element of the offense.** *Apprendi v. New Jersey, supra.* (Negrillas suplidas).

Posteriormente, la Corte Suprema federal continuó acortando la brecha que distingue entre elementos del delito y factores de sentencia.[11] A saber, en *Ring v. Arizona*, 536 US 584 (2002), determinó que el régimen que permite al juez, actuando sin jurado, determinar la existencia de un agravante necesario para imponer la pena de muerte viola la Sexta Enmienda. El Tribunal concluyó que tales agravantes operan como "the functional equivalent of an element of a greater offense" y, por tanto, deben ser determinados por el jurado. Íd, pág. 585. Este caso nuevamente confirma que, para la doctrina federal, lo constitucionalmente determinante es la función sustantiva del hecho sobre la pena.

Más adelante, en *Blakely v. Washington*, 542 US 296 (2004), el Tribunal reafirmó expresamente *Apprendi* y enfatizó que **la autoridad del juez para sentenciar deriva enteramente del veredicto del jurado**, por lo que el legislador no podía reclasificar como "sentencing factors" hechos que tenían el efecto de ampliar el castigo disponible. A su vez, se clarificó que **el *máximo estatutario* para propósitos de**

---

[11] En *McMillan* v. *Pennsylvania,* 477 US 79 (1986), se definió el término "sentencing factor" del siguiente modo*: a fact that was not found by a jury but that could affect the sentence imposed by the judge.*

***Apprendi*** **era el máximo que puede imponerse únicamente con los hechos admitidos por el acusado o encontrados por el jurado.[12] Cualquier aumento adicional exige determinaciones fácticas que deben tratarse como elementos.**

Luego, en *United States v. Booker*, 543 US 220 (2005), la Corte Suprema federal invalidó los aumentos de pena bajo las guías federales mandatorias, basados en hallazgos judiciales, no determinados por el jurado. Adicionalmente, en *Cunningham v. California*, 549 US 270 (2007), estableció el término intermedio como el máximo estatutario autorizado; es decir, la pena sin agravantes o atenuantes. En *Southern Union Co. v. US*, 567 US 343 (2012), extendió la norma de *Apprendi* a la imposición de multas penales, no solo a penas de encarcelamiento. Finalmente, a través de *Alleyne v. US*, 570 US 99 (2013), las penas mínimas obligatorias también quedaron cobijadas por la norma de *Apprendi*. Esto es, cualquier hecho que aumente la pena mínima obligatoria de un delito constituye un "elemento" del delito, y no un mero "factor de sentencia", por lo que debe ser sometido al jurado.[13]

Visto de manera integrada, ***Apprendi*** **y su progenie establecen el principio de que cualquier hecho que altere el marco punitivo autorizado por el veredicto adquiere carácter constitucional, levantando, de esta forma, las garantías del**

---

[12] Textualmente, en *Blakely v. Washington*, *supra*, págs. 303-304, la Corte suprema expresó lo que sigue: *the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.*
[13] El texto original fue el siguiente: *Apprendi's definition necessarily includes not only facts that increase the ceiling, but also those that increase the floor. Alleyne v. United States*, *supra*, pág. 101.

**debido proceso de ley, notificación adecuada, y juicio por jurado.**

### C. Desarrollo de *Apprendi*, *supra*, en Puerto Rico

La norma constitucional delineada por *Apprendi* y su jurisprudencia interpretativa no ha permanecido ajena a nuestro ordenamiento. Por el contrario, esta Curia ha acogido y aplicado los principios enunciados en *Apprendi* y su progenie como parte integral de nuestro sistema acusatorio y de las garantías del debido proceso.

Por ejemplo, en *Pueblo v. Montero Luciano*, *supra*, a pesar de ser un caso que no trata directamente el asunto de los agravantes, hicimos referencia a *Apprendi* al entender en la controversia sobre si el hecho de que la condición de reincidente no tenga que ser alegada en una denuncia o acusación, instada en virtud de la Ley de Vehículos y Tránsito de Puerto Rico, era inconstitucional por violar la cláusula de debido proceso de ley. Dicha interrogante la respondimos en la afirmativa.

Como parte de los fundamentos, reconocimos que la distinción tradicional entre "factores que constituyen elementos del delito" y "factores relevantes al momento de dictar sentencia para aumentar la pena", había perdido vitalidad a partir de *Apprendi*. Asimismo, añadimos que "la norma federal prevaleciente es que **los factores que expongan al acusado a una pena mayor tienen que ser alegados en la acusación y probados por el Ministerio Público más allá de duda razonable**". Íd, pág. 384. (Negrillas suplidas). Como

resultado, declaramos parcialmente inconstitucionales los incisos (b)(4) y (b)(5) del Art. 7.04 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 LPRA sec. 5204(b)(4) y (b)(5), en cuanto eximían al Ministerio Público de alegar la reincidencia en la denuncia por guiar en estado de embriaguez, violando así la cláusula de debido proceso de ley, tanto en su vertiente sustantiva, como en la procesal. De este modo, en *Pueblo v. Montero Luciano*, *supra*, encarna el principio general de que **el Estado no puede introducir hechos que inciden sobre la pena fuera del momento procesal adecuado**.

No fue hasta *Pueblo v. Santana Vélez*, *supra*, que acogimos expresamente la norma de *Apprendi* y su jurisprudencia interpretativa. En este caso, el señor Santana Vélez fue encontrado culpable por un jurado de la comisión del delito de homicidio involuntario codificado en el Art. 86 del Código Penal de 1974, 33 LPRA sec. 4005 (derogado). El Tribunal lo sentenció a una pena de reclusión de tres años, a pesar de que la pena fija para el delito era de un año. Los agravantes no fueron aceptados por el acusado ni presentados ante el jurado, por lo que dicho cuerpo no había realizado determinación alguna al respecto.

Ante ello, declaramos inconstitucional la sentencia impuesta a Santana Vélez por contravenir la norma de *Apprendi* y su progenie. Lo hicimos puesto que, al analizar el sistema de imposición de penas establecido por el Art. 58 del derogado

Código Penal de 1974, 33 LPRA sec. 3282,[14] la pena máxima que podía imponer el juez solo con el veredicto del jurado era la pena fija de un año establecida en el Art. 86 del Código Penal de 1974, *supra.* En ese sentido, manifestamos que **solo la determinación de circunstancias agravantes o atenuantes por el jurado habilitaba al juez a apartarse de la pena base y ejercer la discreción dentro del marco penal establecido. En ausencia de tales circunstancias, el tribunal carece de autoridad para imponer una pena mayor o menor a la fija.** *Pueblo v. Santana Vélez, supra,* págs. 72-73. Por lo cual, afirmamos en dicho caso que, *se debieron probar más allá de duda razonable y ante el jurado las circunstancias agravantes que el Ministerio Público quiso imputar.*

En suma, el principio que quedó cimentado a través de *Pueblo v. Santana Vélez*, *supra*, es que **lo determinante para resolver la validez constitucional de la pena es "precisar si**

---

[14] El Art. 86 del Código Penal de 1974, *supra*, (derogado), leía como sigue:

> Cuando el homicidio involuntario se cometa por una persona al conducir un vehículo de motor, *se le impondrá pena de reclusión por un término fijo de un (1) año. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de tres (3) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) meses y un día.* El tribunal podrá imponer la pena de restitución en adición a la pena de reclusión establecida, o ambas penas. (Énfasis nuestro.) Art. 86 del Código Penal de 1974 (33 L.P.R.A. sec. 4005 (ed. 1983))

Al interpretarlo en *Pueblo v. Santana Vélez*, *supra*, sostuvimos que el juez carecía de discreción para establecer otra pena, salvo que mediara la determinación de hechos adicionales al veredicto del jurado, pues el artículo en cuestión establecía que "se le impondrá pena de reclusión por un término fijo de un año". Por lo cual, razonamos que este no establecía que el juez *podía* imponer, sino que **ordenaba** que se le impusiera dicha pena fija, limitando la discreción de éste en ese ejercicio. Por lo tanto, manifestamos que el texto de la ley era impositivo, no permisivo, por lo que el juez estaba obligado a imponer la pena fija, en ausencia de atenuantes o agravantes.

**el juez tiene discreción para imponer cualquier pena a través del intervalo o está obligado a imponer la pena fija establecida para el delito, en ausencia de atenuantes o agravantes"**. Es decir, **cuando el sistema de imposición de penas obliga a imponer una pena base predeterminada y solo autoriza una sanción mayor tras la determinación de circunstancias agravantes o atenuantes, estas no pueden ser adjudicadas por el juez en sentencia.** Íd, pág. 73.

Dos años más tarde, en *Pueblo v. Bonilla Peña*, 183 DPR 335 (2011), examinamos la controversia sobre si la pena carcelaria impuesta por el juez del Tribunal de Primera Instancia era contraria a lo resuelto en *Apprendi v. New Jersey*, *supra*, y *Pueblo v. Santana Vélez*, *supra*, al considerar factores agravantes no analizados por el jurado y exceder la pena fija dispuesta por el Art 5.04 de la Ley de Armas, 25 LPRA sec. 458c.

Concretamente, el jurado halló culpables a los cinco acusados por los cargos de asesinato en primer grado del Art. 83 del Código Penal de 1974, 33 LPRA ant. sec. 3001 *et seq.*), violación al Art 5.04 de la Ley de Armas (portación y uso de armas de fuego sin licencia), 25 LPRA sec. 458c, e infracción al Art. 5.07 de la Ley de Armas (posesión o uso ilegal de armas largas semiautomáticas, automáticas o escopeta de cañón cortado), 25 LPRA sec. 458f. Todos estos delitos conllevaban penas fijas predeterminadas: 99 años por asesinato en primer grado, 10 años por cada infracción al Art. 5.04, *supra*, reducibles o aumentables mediante la determinación de

atenuantes y agravantes, y 24 años por el Art. 5.07, *supra*, igualmente ajustables conforme a tales circunstancias. No obstante, el foro de instancia impuso penas superiores a estos límites estatutarios al aumentar las penas de los Arts. 5.04 y 5.07, *supra*, sin que el jurado hubiese determinado la existencia de agravantes más allá de duda razonable.[15] Por consiguiente, declaramos ilegal el dictamen, por cuanto añadió 31 años más que lo que correspondía en derecho. Nuestro análisis fue el siguiente:

> De acuerdo con nuestra jurisprudencia y la del Tribunal Supremo federal, **era al Jurado —y únicamente a él— a quien correspondía determinar, más allá de duda razonable, si había factores agravantes en la violación de los Arts. 5.04 y 5.07 de la Ley de Armas,** *supra*, **que ameritaran el incremento de la pena contemplada por el límite estatutario penal. Ese análisis del Jurado no se dio.** Como bien señalamos en *Pueblo v. Santana Vélez*, supra, pág. 71, citando a *Blakely v. Washington*, 542 U.S. 296 (2004), **"[e]l límite estatutario es aquella pena máxima que el juez puede imponer con el s[o]lo veredicto de culpabilidad del jurado, sin la necesidad de determinar hechos adicionales"**. *Pueblo v. Bonilla Peña*, *supra,* pág. 353. (Negrillas suplidas).

Por último, en *Pueblo v. Pagán Rojas et al.*, *supra*, este Tribunal atendió por primera vez de forma expresa la controversia relativa al *momento procesal y mecanismo adecuado* para alegar y adjudicar las circunstancias agravantes de la pena en juicios por jurado. En dicho caso, tras radicarse las acusaciones correspondientes, la defensa solicitó la eliminación de los agravantes del pliego

---

[15] El desglose de la sentencia se hizo de la forma siguiente: 99 años por el cargo asesinato en primer grado; 15 años por cada uno de los 5 cargos del Art. 5.04 de la Ley de Armas, *supra*, para un total de 75 años en este renglón, y 30 años por el cargo de violación al Art. 5.07 de la Ley de Armas, *supra.* Como se puede apreciar, la sentencia que impuso el juez en cada una de las infracciones al referido Art. 5.04 de la Ley de Armas excedió, por 5 años en cada cargo, la pena fija dispuesta en el estatuto. Del mismo modo, la pena en el cargo de violación al Art. 5.07 de la Ley de Armas, *supra*, superó por 6 años la pena fija establecida en ese estatuto.

acusatorio, por razón de que su inclusión junto a los cargos imputados expondría indebidamente al jurado a información potencialmente perjudicial antes de deliberar sobre la culpabilidad. Entonces, ante la ausencia de una norma jurisprudencial o estatutaria que atendiera dicho asunto, pautamos las guías procesales necesarias para armonizar el derecho del acusado a una notificación adecuada con su derecho constitucional a un juicio justo ante un jurado imparcial.

A esos fines, reconocimos que los agravantes sí deben notificarse y sí deben ser probados por el jurado más allá de duda razonable, pero no necesariamente dentro del pliego acusatorio. Es decir, diseñamos un mecanismo dual donde los agravantes deben notificarse formalmente, pero consignados en un pliego separado del acusatorio, para no exponer al jurado a hechos potencialmente inflamatorios antes del veredicto de culpabilidad. *Pueblo v. Pagán Rojas et al.*, *supra*, pág. 488. En vista de ello, **establecimos como mejor práctica la presentación de un pliego separado de agravantes, el cual puede someterse al jurado junto con la acusación o en una vista posterior, siempre garantizando la notificación oportuna al acusado y evitando que los agravantes contaminen la determinación de culpabilidad.**

Esta norma procesal fue particularizada aún más en la Opinión al disponer que, al inicio de un juicio por jurado solo se deberá leer el pliego que imputa la comisión del delito, pero no así el de los agravantes. Íd. Ahora bien, dependiendo de la prueba desfilada y del criterio del

tribunal, podrá someterse posteriormente al jurado para su adjudicación. Íd.

Cuando la prueba admisible para establecer la comisión del delito también evidencie las circunstancias agravantes, el Ministerio Público podrá solicitar que el pliego acusatorio y el pliego de agravantes se someta conjuntamente al jurado, de modo que, tras un veredicto de culpabilidad, este determine si tales agravantes fueron probados más allá de duda razonable. Íd., pág. 483. No obstante, corresponde al tribunal, en el ejercicio de su discreción, auscultar previamente si revelar los agravantes antes del verdecito le ocasionaría un perjuicio indebido al acusado. Íd., págs. 483-484. De entender que existe tal riesgo, o cuando no haya surgido toda la prueba necesaria durante el juicio, procederá la celebración de una vista posterior ante el mismo jurado para ventilar la prueba ateniente a agravantes o atenuantes, manteniéndose dicho cuerpo para adjudicar esas circunstancias bajo el estándar de duda razonable. Íd., pág. 484.

### D. Ley de Armas de 2000

La Ley Núm. 404 de 11 de septiembre de 2000, según enmendada, Ley de Armas de Puerto Rico, 25 LPRA sec. 455 *et seq.*, fue promulgada con el propósito principal de establecer un marco efectivo para el control de armas de fuego en la Isla, atendiendo el vínculo directo entre el uso indebido de armas y la actividad delictiva. *Cancio, Ex parte,* 161 DPR 479 (2004).[16] También, entre los objetivos de la referida ley

---

[16] Véase nota al calce 1.

figuraban promover el manejo responsable de armas de fuego por las personas autorizadas y advertir sobre las consecuencias penales asociadas a su utilización en la comisión de delitos. Exposición de Motivos de la Ley Núm. 404-2000 (2000 [Parte 3] Leyes de Puerto Rico 2600, 2602; *Pueblo v. Morales Roldán*, 213 DPR 1112 (2024).

El Artículo 5.04 de la Ley de Armas, 25 LPRA Sec. 458c, sobre portación y uso de armas de fuego sin licencia dispone, en lo aquí pertinente que:

> Toda persona que transporte cualquier arma de fuego o parte de ésta, sin tener una licencia de armas, o porte cualquier arma de fuego sin tener su correspondiente permiso para portar armas, incurrirá en delito grave y convicta que fuere, será sancionada con pena de reclusión por un término fijo de diez (10) años, sin derecho a sentencia suspendida, a salir en libertad bajo palabra, o a disfrutar de los beneficios de algún programa de desvío, bonificaciones o alternativa a la reclusión reconocida en esta jurisdicción, debiendo cumplir en años naturales la totalidad de la pena impuesta. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de veinte (20) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de cinco (5) años.
> …
> Cuando el arma sea una neumática, pistola o artefacto de descargas eléctricas, de juguete o cualquier imitación de arma y ésta se portare o transportare con la intención de cometer delito o se usare para cometer delito, la pena será de reclusión por un término fijo de cinco (5) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de diez (10) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de un (1) año.
> …
> Se considerará como "agravante" cualquier situación en la que el arma ilegal se utilice en la comisión de cualquier delito o su tentativa.

En lo concerniente al acto de disparar o apuntar un arma, el Art. 5.15 de la Ley de Armas, 25 LPRA sec. 458n, dispone que:

> (A) Incurrirá en delito grave toda persona que, salvo en casos de defensa propia o de terceros o de actuaciones en el desempeño de funciones oficiales o de actividades legítimas de deportes, incluida la caza, o del ejercicio de la práctica de tiro en un club de tiro autorizado: (1) voluntariamente dispare cualquier arma en un sitio público o en cualquier

otro sitio, aunque no le cause daño a persona alguna, o (2) intencionalmente, aunque sin malicia, apunte hacia alguna persona con un arma, aunque no le cause daño a persona alguna. La pena de reclusión por la comisión de los delitos descritos en los incisos (1) y (2) anteriores, será por un término fijo de cinco (5) años. De mediar circunstancias agravantes, la pena establecida podrá ser aumentada hasta un máximo de diez (10) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de un (1) año.

Luego, con el fin de "fortalecer las herramientas al alcance del sistema judicial y corregir lagunas existentes para penalizar severamente al delincuente que hace mal uso de la licencia de armas y sus permisos[,] así como el uso de armas y municiones ilegales", la Asamblea Legislativa aprobó la Ley Núm. 137-2004. Exposición de Motivos de la Ley Núm. 137-2004, 2004 (Parte 1) Leyes de Puerto Rico 756; *Pueblo v. Concepción Guerra*, 194 DPR 291 (2015). Como resultado, el Art. 7.03 de la Ley de Armas, 25 LPRA sec. 460b, sobre el agravamiento de las penas, fue enmendado a los fines de añadir el siguiente párrafo:

> […]
> Todas las penas de reclusión que se impongan bajo esta Ley serán cumplidas consecutivamente entre sí y consecutivamente con las impuestas bajo cualquier otra ley. Además, **si la persona** hubiere sido convicta anteriormente por cualquier violación a esta Ley o por cualquiera de los delitos especificados en el Artículo 2.11 de esta Ley o **usare un arma en la comisión de cualquier delito y como resultado de tal violación alguna persona sufriera daño físico o mental, la pena establecida para el delito se duplicará.** (Negrillas suplidas).

El artículo precitado fue interpretado por este Tribunal en *Pueblo v. Concepción Guerra*, *supra*, al atender la controversia sobre si la pena que se puede duplicar, de encontrarse probada alguna circunstancia agravante allí establecida, es la pena fija establecida para el delito o la pena aumentada o reducida luego de probarse algún agravante.

En dicho caso, Concepción Guerra fue acusado y convicto por violaciones a los Arts. 5.04 y 5.15 de la Ley de Armas, *supra*. El foro de instancia impuso las penas fijas establecidas de cinco y diez años, respectivamente. Luego, las aumentó hasta el máximo permitido por los referidos Artículos, diez y veinte años. A las penas agravadas, posteriormente les aplicó el agravante del Art. 7.03, *supra*, lo que conllevó la duplicación de dichas penas. En respuesta, resolvimos que la pena que el Art. 7.03, *supra*, autoriza duplicar es la pena dispuesta para el delito imputado una vez considerados los posibles agravantes y atenuantes. En ausencia de estos agravantes o atenuantes, la duplicación se rige por la pena fija establecida.

### III

En el caso de autos, el jurado declaró culpable al señor Torrech Rodríguez por infringir, a modo de cooperador, el Art. 190, incisos (c) y (d) del Código Penal, *supra*, robo agravado, y el Art. 5.15 de la Ley de Armas, *supra*, apuntar con un arma. Además, el Jurado lo halló culpable, en la modalidad de coautor, por infringir el Art. 5.04 de la Ley de Armas, *supra*, al portar un arma de fuego sin licencia.

Al dictar *Sentencia*, el foro de instancia le impuso al peticionario una pena de **45 años** de reclusión. Esta incluyó **10 años** por cada uno de los cargos por violación al Art. 190, incisos (c) y (d) del Código Penal, *supra*, los cuales se ordenaron a cumplirse concurrentes entre sí. Esta porción de la *Sentencia* no está en controversia ante este Tribunal.

En lo que respecta a las infracciones a la Ley de Armas, *supra*, y conforme al veredicto emitido por el jurado, la pena fija autorizada por los delitos de los Arts. 5.04 y 5.15 de la Ley de Armas, *supra*, ascendía a 10 y 5 años, respectivamente. Cada una de estas penas quedaba sujeta al marco de agravantes y atenuantes dispuesto en dichos Artículos.

No obstante, al aplicar el mecanismo previsto en el Art. 7.03 de la Ley de Armas, *supra*, el foro primario duplicó a **20 años** la pena fija de 10 años establecida en el Art. 5.04 de la Ley de Armas, *supra*. En los tres cargos por el Art. 5.15 de la Ley de Armas, *supra*, le impuso la mitad de la pena (2.5 años) por haber sido declarado culpable como cooperador, pero luego la duplicó a 5 años, para un total de **15 años.** En total, **por virtud del Art. 7.03 de la Ley de Armas, *supra*, la exposición penal originalmente autorizada por el veredicto del Jurado añadió 17.5 años de reclusión por los delitos del Art. 5.04 de la Ley de Armas, *supra*, y Art. 5.15 de la Ley de Armas, *supra*.**

Es precisamente la constitucionalidad de ese aumento punitivo lo que debemos examinar. Concretamente, nos corresponde resolver si es válida la pena impuesta por el foro de instancia en la *Sentencia* donde, por virtud del Art. 7.03 de la Ley de Armas, *supra*, duplicó los delitos del Art. 5.04 y 5.15, sin que los pliegos acusatorios de dichos delitos incluyeran los elementos que autorizan dicha duplicidad. Respondemos en la negativa.

La postura del peticionario es que el agravamiento aplicado al amparo del Art. 7.03 de la Ley de Armas, *supra*, no podía imponerse sin que los hechos que lo activaban fueran notificados en el pliego acusatorio correspondiente a los delitos de los Arts. 5.04 y 5.15 de la Ley de Armas, *supra*, y sin ser adjudicados por el jurado más allá de duda razonable. Aduce, pues, que el veredicto de culpabilidad por dichos delitos solo autorizaba la pena fija correspondiente a cada uno, y que cualquier aumento adicional requería la determinación expresa de hechos adicionales bajo el estándar de prueba más allá de duda razonable, previa notificación en los pliegos acusatorios. Entre esos hechos, esgrimió que debió alegarse, **además de que el arma fue utilizada en la comisión de un robo que, como consecuencia de ello, alguna de las víctimas sufrió daño físico o emocional.** Sostiene, además, que la omisión de notificar dichos hechos afectó su capacidad de preparar adecuadamente la defensa y de evaluar su exposición penal real.

Por su parte, el Estado arguye que el Art. 7.03 de la Ley de Armas, *supra*, no configura un elemento del delito, sino un mandato legislativo de aplicación automática. Desde esa premisa, concluye que no era necesario incluir el agravante en el pliego acusatorio ni someterlo a la consideración del jurado, pues su aplicación corresponde al juez en la etapa de imposición de pena.

Resumidas las respectivas posturas, lo primero que corresponde examinar para atender correctamente la

controversia es si el agravamiento (duplicidad) dispuesto en el Art. 7.03 de la Ley de Armas, *supra*, constituye un hecho que altera el marco punitivo autorizado por el veredicto. De ser así, luego debemos identificar cuáles garantías procesales resultan constitucionalmente indispensables para su válida aplicación.

Conforme surge de la exposición de derecho, la línea jurisprudencial federal iniciada por *Apprendi v. New Jersey*, *supra*, estableció que, salvo la reincidencia, todo hecho que aumente la pena más allá del máximo autorizado por el veredicto debe ser notificado en la acusación ("indictment"), sometido al jurado y probado más allá de duda razonable. Por consiguiente, el enfoque adoptado por el Alto foro federal se centra, **no en la denominación legislativa, sino en su efecto punitivo y si este amplía el castigo disponible con el solo veredicto de culpabilidad.**

Esa norma fue extendida en casos posteriores para abarcar no tan solo aumentos del máximo, sino también del mínimo mandatorio. **El propósito fue evitar que la clasificación formal de un hecho como "factor de sentencia" se use como subterfugio para eludir el derecho constitucional a juicio por jurado y notificación adecuada cuando ese hecho altera el marco punitivo autorizado por el veredicto.**

En cambio, si bien esta Curia ha acogido los principios medulares de *Apprendi*, lo ha hecho integrándolos dentro de nuestro propio marco procesal. A saber, en *Pueblo v. Montero Luciano*, *supra*, reconocimos que la distinción tradicional

entre elementos del delito y factores de sentencia perdió vigor cuando el efecto del hecho es aumentar la exposición penal. Posteriormente, en *Pueblo v. Santana Vélez*, *supra*, acogimos expresamente la norma de *Apprendi* y la aplicamos al sistema de imposición de penas del Código Penal vigente en ese momento.

Allí establecimos un criterio de particular relevancia para el caso que nos ocupa: **lo determinante es precisar si el juez tiene discreción para imponer cualquier pena dentro de un intervalo, o si está obligado a imponer una pena fija predeterminada y solo puede apartarse de ella tras la determinación de circunstancias agravantes o atenuantes.** En este segundo escenario, dichas circunstancias no pueden ser adjudicadas por el juez en sentencia; deben ser probadas más allá de duda razonable ante el jurado. **En ausencia de esa determinación, el tribunal carece de autoridad para apartarse de la pena fija.**

Esa misma lógica fue reafirmada en *Pueblo v. Bonilla Peña*, *supra*. Aquí, esta Curia resolvió que el aumento de la **pena fija de 10 años** hasta 20 años de reclusión, de mediar circunstancias agravantes, contemplado dentro del propio Art. 5.04 de la Ley de Armas, *supra*, estaba sujeto a las garantías constitucionales delineadas en *Apprendi* y acogidas en *Santana Vélez*. Allí dejamos claro que, **cuando el esquema estatutario obliga a imponer una pena base fija y solo le permite al juez apartarse de ella tras la determinación de los agravantes, esos hechos deben ser adjudicados por el jurado más allá de**

**duda razonable. En ausencia de tal determinación, el tribunal carece de autoridad para aumentar la pena.**

A su vez, en *Pueblo v. Concepción Guerra*, *supra*, interpretamos el alcance del Art. 7.03 de la Ley de Armas, *supra*, y resolvimos que la pena que dicho artículo autoriza duplicar es la correspondiente al delito imputado, una vez considerados los posibles agravantes y atenuantes. En ausencia de estos, la duplicación recae sobre la pena fija establecida. Esta interpretación reviste particular importancia, pues evidencia que **el Art. 7.03 de la Ley de Armas**, *supra*, **opera sobre la pena autorizada por el veredicto de manera que puede aumentar el rango punitivo constitucionalmente permitido, ya sea el fijo o el agravado.**

Por lo cual, concluimos que el supuesto contemplado en el Art. 7.03 de la Ley de Armas, *supra*, esto es, (1) que se use un arma en la comisión de cualquier delito; y que (2) que como resultado de tal violación; (3) alguna persona sufra un daño físico o mental, no constituye un mero factor de individualización de la pena que opera de manera automática. Por el contrario, son hechos adicionales que, de concurrir, exponen al acusado a un castigo mayor que el autorizado por el veredicto del delito base. Bajo el análisis funcional adoptado en los precedentes mencionados, ese hecho adquiere relevancia constitucional. Por consiguiente, activa las

garantías constitucionales de notificación adecuada y juicio por jurado.[17]

Concretamente, tanto la Enmienda IV de la Constitución federal como la Sec. 11 del Art. II de nuestra Constitución reconocen expresamente que en todo proceso criminal el acusado tendrá derecho a ser notificado de la naturaleza y causa de la acusación. Este requisito se extiende a los hechos que constituyen agravantes de la pena por virtud de la doctrina federal y estatal que hemos reiterado a lo largo de este caso. Por lo tanto, "para que un procedimiento cumpla con el debido proceso de ley en su vertiente procesal, éste debe comenzar con una notificación adecuada del proceso". *Pueblo v. Pagán Rojas et al.*, *supra*, pág. 480.

El omitirse los hechos que activan la duplicidad del Art. 7.03 de la Ley de Armas, *supra*, en el instrumento de notificación correspondiente **constituye un defecto sustancial que, de no ser subsanado oportunamente, invalida el aumento de la pena.** Esto es, **ante la ausencia de una notificación formal de dichos hechos, el tribunal carece de facultad para imponer la pena duplicada.**

En vista de lo anterior, conviene realizar una delimitación conceptual en torno a si el agravante debía consignarse necesariamente en el pliego acusatorio. Ello ya

---

[17] Visto de manera integrada con *Pueblo v. Concepción Guerra*, *supra*, es forzosa la conclusión de que si el aumento de la pena dentro del propio Art. 5.04 de la Ley de Armas, *supra*, requiere adjudicación por jurado por alterar el límite autorizado por el veredicto, **con mayor razón la duplicación prevista en el Art. 7.03 de la Ley de Armas**, *supra*, **también lo requiere, pues altera sustancialmente el marco punitivo, fijo o agravado.**

fue dilucidado en *Pueblo v. Pagán Rojas et al.*, *supra*. Por lo cual, el presente caso no supone la adopción de la regla federal que equipara *automáticamente* todo aumento punitivo con un elemento del delito. Nuestro examen se rige por el marco doctrinal propio de nuestra jurisdicción. Conforme a este, los elementos del delito se consignan en la acusación, mientras que las circunstancias agravantes pueden ventilarse mediante un pliego separado, siempre que medie notificación adecuada al acusado y que los hechos correspondientes sean sometidos al jurado y probados más allá de duda razonable. En otras palabras, *no se trata de redefinir el instrumento procesal aplicable, sino de precisar cuándo la Constitución exige su utilización, y en qué condiciones, para la válida imposición del agravamiento*.

La próxima garantía procesal que levanta la duplicidad de la pena a tenor con el Art. 7.03 de la Ley de Armas, *supra*, es que los tres supuestos sean adjudicados por el jurado. Lo contrario permitiría que la sanción final descansara en determinaciones fácticas adoptadas fuera del proceso adjudicativo ordinario, en menoscabo del derecho a un juicio por jurado y del debido proceso de ley.

Nótese que los hechos de los delitos base tipificados por los Arts. 5.04 y 5.15 de la Ley de Armas, *supra*, pueden probarse sin demostrar daño físico o mental a otra persona. No obstante, la duplicación de la pena depende exclusivamente de esa determinación adicional. Los tres supuestos del Art. 7.03 de la Ley de Armas, *supra*, son hechos empíricos,

controvertibles y requieren prueba. **No pueden surgir por primera vez en etapa de sentencia ni quedar a la discreción exclusiva del tribunal sentenciador, trasladándole de esta forma una función que la Constitución reserva al jurado. El veredicto del delito base no autoriza, por sí solo, la imposición de la pena duplicada.**

Incluso, tal esquema no solo rebaja el estándar probatorio, como ocurrió en los hechos que originaron *Apprendi*, sino que contraviene la norma jurisprudencial de que no pueden operar presunciones arbitrarias en el ámbito penal. Véase, *Pueblo v. De Jesús Cordero*, 101 DPR 492, 501 (1973).

Por último, la aplicación del Art. 7.03 de la Ley de Armas, *supra*, carece de discreción judicial. Al establecer que "si la persona […] usare un arma en la comisión de cualquier delito y, como resultado de tal violación, alguna persona sufriera daño físico o mental, **la pena establecida para el delito se duplicará**", el estatuto utiliza lenguaje imperativo y obliga a duplicar la pena **una vez se determine la concurrencia del hecho agravante.** En cuyo caso, **el juez no pondera el hecho agravante, sino que, probado este, impone la pena.**

Por consiguiente, concluimos que los supuestos para duplicar la pena al amparo el Art. 7.03 de la Ley de Armas, *supra*, constituyen hechos que, por alterar el marco punitivo autorizado por el veredicto del jurado, adquieren rango constitucional. En consecuencia, requiere, ineludiblemente,

(1) notificación formal, específica y oportuna al acusado de los hechos que activan la duplicación de la pena; (2) la adjudicación de dichos hechos por el jurado, bajo el estándar de prueba más allá de duda razonable.

**IV**

Conforme surge del expediente, los hechos activadores de la duplicidad de la pena al amparo del Art. 7.03 de la Ley de Armas, *supra*, no fueron incluidos en los pliegos de agravantes correspondiente a los delitos de los Arts. 5.04 y 5.15 de la Ley de Armas, *supra,* según dispone *Pueblo v. Pagán Rojas et al., supra*, o incluso en las respectivas acusaciones. En consecuencia, al carecer de una notificación formal, se le violentó al peticionario el derecho al debido proceso de ley.

La particularidad que presenta este caso es que se consignó en la acusación por el delito de robo agravado, Art. 190(c) y (d) del Código Penal, *supra*, que *se infligió daño físico a la víctima mediante golpe en la cabeza con un arma de fuego*. No obstante, el hecho de que los elementos fácticos de uno de los delitos imputados aparenten coincidir con los supuestos contemplados en el Art. 7.03 de la Ley de Armas, *supra*, no releva al Ministerio Público del cumplimiento del mandato constitucional de notificación previa, oportuna y adecuada en cuanto a los delitos imputados en el Art. 5.04 y 5.15 de la Ley de Armas, *supra*. Esto, a su vez, constituye un requisito indispensable para que el Jurado pudiera pasar juicio válido sobre los hechos.

Para satisfacer el requisito de notificación adecuada cuando el Estado pretende aplicar el agravante del Art. 7.03 de la Ley de Armas, *supra*, el instrumento procesal correspondiente debe consignar expresamente los hechos que activan la duplicación de la pena. Ello implica **alegar que el arma se utilizó en la comisión de un delito específico y que, como resultado de esa conducta, alguna persona sufrió daño físico o mental.** No basta con que tales hechos surjan de otra acusación ni de la prueba presentada en el juicio. **La notificación adecuada exige que el acusado conozca, con claridad y oportunidad, que por el cargo particular cuya pena se pretende duplicar enfrenta una exposición penal mayor, a fin de preparar su defensa conforme a derecho.**

Sin embargo, al examinar los pliegos acusatorios de los Arts. 5.04 y 5.15 de la Ley de Armas, *supra*, notamos que solo contienen los elementos de dichos delitos, y no le notificaron al peticionario los hechos que, de probarse más allá de duda razonable, le expondrían a una pena agravada.

Insistimos en que la notificación adecuada, en este contexto, debe ser **específica y dirigida al agravamiento que el Estado pretende invocar.** Ello exige que el acusado sea advertido de que, respecto a cada cargo imputado, su exposición penal puede duplicarse por la concurrencia de determinados hechos. Tal advertencia no constituye un formalismo vacío, pues incide directamente sobre la estrategia de defensa. Asimismo, garantiza que el acusado cuente con la información necesaria para tomar decisiones

informadas e inteligentes respecto a cualquier negociación de alegación de culpabilidad, la formulación de la teoría del caso, y la preparación de la prueba pericial dirigida a controvertir el agravamiento.

En suma, la pena máxima que podía imponer el Tribunal de Primera Instancia con el veredicto del Jurado solo era la pena fija de diez y cinco años autorizada por los Arts. 5.04 y 5.15 de la Ley de Armas, *supra*, respectivamente, según los hechos válidamente adjudicados. La duplicación al amparo del Art. 7.03 de la Ley de Armas, *supra*, requería previa alegación formal y la determinación expresa de que, como consecuencia de cualquiera de los delitos imputados, alguna persona, identificándola, sufrió daño físico o mental. Al no haberse cumplido con tales exigencias, el agravamiento impuesto resulta constitucionalmente inválido. Ello, sin embargo, no incide sobre la determinación de culpabilidad emitida por el Jurado.

En consecuencia, se cometió el error señalado por lo que procede revocar la *Sentencia* dictada por el Tribunal de Apelaciones en cuanto validó la aplicación del Art. 7.03 de la Ley de Armas, *supra*, y modificar la *Sentencia* emitida por el foro primario a los fines de eliminar la duplicación impuesta.

## V

Por los fundamentos antes expuestos, se revoca la *Sentencia* emitida por el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que resentencie

al peticionario conforme al marco punitivo autorizado por el veredicto, de manera compatible con lo aquí resuelto.

Por último, conforme a los hechos de este caso esta norma será de aplicación a los casos que no hayan advenido finales y firmes. El remedio ordinario disponible será la eliminación de la duplicidad y la resentencia conforme al marco punitivo autorizado por el veredicto.

Se dictará Sentencia en conformidad.


                                        Camille Rivera Pérez
                                          Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Jesús M. Torrech Rodríguez<br><br>Peticionario | CC-2025-0105 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 3 de junio de 2026.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revoca la *Sentencia* emitida por el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que resentencie al peticionario conforme al marco punitivo autorizado por el veredicto, de manera compatible con lo aquí resuelto.

Por último, conforme a los hechos de este caso esta norma será de aplicación a los casos que no hayan advenido finales y firmes. El remedio ordinario disponible será la eliminación de la duplicidad y la resentencia conforme al marco punitivo autorizado por el veredicto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emite la siguiente expresión de conformidad a la cual se une la Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Colón Pérez:

Estoy conforme con el dictamen al cual arriba este Tribunal y con las garantías individuales que se preservan al reafirmar nuestra línea jurisprudencial en esta materia. En ese ánimo, recuerdo que los recientes desarrollos jurisprudenciales, tanto a nivel del Tribunal Supremo Federal como de este foro, nos conducirán en un futuro a tener que pautar en torno a reclamos de personas privadas de libertad con sentencias finales y firmes, dirigidos a que se le apliquen

las mismas garantías que han sido adjudicadas en casos y controversias de peticionarios con sentencias que no eran finales y firmes. Por ello, no cierro las puertas a atender reclamos de esa naturaleza basados en los fundamentos que reconoce la Regla 192.1 de Procedimiento Criminal, 34 LPRA Ap. II. Véase, además, *Pueblo v. Alers De Jesús*, 206 DPR 872 (2021) (Resolución) (Voto particular disidente del Juez Asociado señor Estrella Martínez).

El Juez Asociado señor Candelario López emite una Opinión Disidente a la cual se une la Jueza Asociada señora Pabón Charneco.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Jesús M. Torrech Rodríguez<br><br>Peticionario | CC-2025-0105 | *Certiorari* |

**Opinión disidente emitida por el Juez Asociado SEÑOR CANDELARIO LÓPEZ a la que se une la Jueza Asociada SEÑORA PABÓN CHARNECO.**

En San Juan, Puerto Rico, a 3 de junio de 2026.

En esta ocasión nos vemos forzados a disentir del curso de acción adoptado por una mayoría de este Tribunal. A pesar de que reconocemos el rigor analítico con el que se ha abordado la doctrina esbozada en *Apprendi v. New Jersey*, 530 US 466 (2000) (*Apprendi*) y su progenie, somos del criterio de que no procede extenderla a los hechos específicos ante nuestra consideración. Esto así pues su aplicación al caso de epígrafe descansa sobre una lectura descontextualizada y enajenada de la realidad procesal que obra en el expediente ante nos. En específico, la *Opinión* mayoritaria pasa por alto que, en el caso de autos, **el acusado contó con notificación adecuada de los hechos que activan la duplicidad de penas al amparo del Art. 7.03 de la Ley de Armas, *infra*, y que estos sí fueron probados más allá de duda razonable ante el jurado.**

Por esta razón, entendemos que la duplicidad de penas impuestas por el foro primario fue constitucionalmente

válida y que procede confirmar la sentencia apelada. Al resolver lo contrario, lejos de fortalecer las garantías constitucionales del acusado, **el efecto que tiene el dictamen mayoritario es convertir el derecho a una notificación adecuada en un tecnicismo procesal al servicio de la impunidad.** Además, justipreciamos que con esta decisión, se convierte inoficiosa la Regla 37(a) de Procedimiento Criminal, 34 LPRA Ap. II, ya que menoscaba la facultad que tiene el Estado para la acumulación de delitos en un mismo pliego acusatorio. En consecuencia, por ser del criterio de que la actuación del Ministerio Público no vulnera el debido proceso de ley, el derecho a juicio por jurado, ni el derecho del acusado a una notificación adecuada, no podemos avalar la conclusión plasmada en la *Opinión* mayoritaria.

## I

Los hechos procesales de este caso se encuentran resumidos adecuadamente en la *Opinión* del Tribunal. Aun así, interesamos puntualizar que la pregunta medular que debió guiar el análisis de esta Curia no es si los pliegos acusatorios de los Arts. 5.04 y 5.15 de la Ley de Armas, *infra*, contenían en su texto individual todos los hechos que activan la duplicidad del Art. 7.03 de la misma ley. **La interrogante constitucional correcta, y la única que amerita consideración conforme al debido proceso de ley y la doctrina esbozada en *Apprendi* y su progenie, es si el señor Jesús M. Torrech Rodríguez (señor Torrech Rodríguez o**

**peticionario) tuvo conocimiento real, oportuno y suficiente de los hechos que le exponían a la pena duplicada, y si estos hechos fueron sometidos ante un jurado y probados más allá de duda razonable.**

Para ello, recalcamos que, por hechos ocurridos el 14 de julio de 2019, el Ministerio Público presentó seis acusaciones en contra del peticionario: dos por el delito de robo agravado enmarcado en los Arts. 190(c) y 190(d) del Código Penal de Puerto Rico (Código Penal), 33 LPRA sec. 5260, a modo de cooperador; uno por el Art. 5.04 de la Ley de Armas de Puerto Rico[1] (Ley de Armas), 25 LPRA sec. 458c; y tres por el Art. 5.15 de la misma ley, 25 LPRA sec. 458n, a modo de cooperador. En lo pertinente a lo que nos concierne, la acusación por el Art. 190(c) de robo agravado se leía de la siguiente manera:

> El referido acusado, JES[Ú]S M TORRECH RODR[Í]GUEZ, actuando en concierto y mutuo acuerdo con ALEJANDRO MODESTO CASTRO MEL[É]NDEZ Y JUAN EUGENIO LEBR[Ó]N GONZ[Á]LEZ, allá en o para el día 14 de JULIO de 2019, y en ARECIBO, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de ARECIBO, ilegal, voluntaria y criminalmente, se apropió de un teléfono celular marca Samsung, Galaxy S9+, color violeta, perteneciente a KATIE DEVLIN, sustrayéndolo de la persona en su inmediata presencia y contra su voluntad, por medio de la violencia y/o intimidación, **infligiendo daño físico a la víctima mediante golpe en la cabeza con un arma de fuego**, y en un edificio ocupado donde estaba la víctima y/o en cualquier otro lugar donde la víctima tenía una expectativa razonable de intimidad.
> (Negrillas y subrayado suplidos).

---

[1] Recalcamos que la Ley de Armas a la que hacemos referencia es la Ley Núm. 404-2000, según enmendada, conocida como "Ley de Armas de Puerto Rico", por ser el estatuto vigente al momento en que ocurrieron los hechos delictivos. Posteriormente, esta legislación fue derogada y sustituida por la Ley Núm. 168-2019, Ley de Armas de Puerto Rico de 2020, 25 LPRA sec. 461 et seq.

A su vez, las acusaciones por los delitos de la Ley de Armas, *supra*, leían como sigue:

**Art. 5.04 de la Ley de Armas, *supra*, (CLA2019G0173)**

El referido acusado, JES[Ú]S M TORRECH RODR[Í]GUEZ, actuando en concierto y mutuo acuerdo con ALEJANDRO MODESTO CASTRO MEL[É]NDEZ Y JUAN EUGENIO LEBR[Ó]N GONZ[Á]LEZ, allá en o para el día 14 de JULIO de 2019, y en ARECIBO, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de ARECIBO, ilegal, voluntaria y criminalmente, transportó y/o portó un arma de fuego, UN ARMA COLOR NEGRO Y ROJO, sin tener una licencia de armas para portar armas bajo la Ley. EL ARMA NO FUE OCUPADA Y **FUE UTILIZADA EN LA COMISI[Ó]N DEL DELITO DE ROBO AGRAVADO**. (Negrillas y subrayado suplidos).

**Art 5.15 de la Ley de Armas, supra, (CLA2019G0174)**

El referido acusado, JES[Ú]S M TORRENCH RODR[Í]GUEZ, actuando en concierto y mutuo acuerdo con ALEJANDRO MODESTO CASTRO MEL[É]NDEZ Y JUAN EUGENIO LEBR[Ó]N GONZ[Á]LEZ, allá en o para el día 14 de JULIO de 2019, y en ARECIBO, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de ARECIBO, ilegal, voluntaria y criminalmente, apuntó a BENJAM[Í]N DEVLIN con un arma de fuego, color negro y rojo, en un sitio público o en cualquier otro sitio donde hubo alguna persona que pudo sufrir daño, **en la comisión del delito de Robo Agravado**. (Negrillas y subrayado suplidos).

**Art. 5.15 de la Ley de Armas, supra, (CLA2019G0175)**

El referido acusado, JES[Ú]S M TORRENCH RODR[Í]GUEZ, actuando en concierto y mutuo acuerdo con ALEJANDRO MODESTO CASTRO MEL[É]NDEZ Y JUAN EUGENIO LEBR[Ó]N GONZ[Á]LEZ, allá en o para el día 14 de JULIO de 2019, y en ARECIBO, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de ARECIBO, ilegal, voluntaria y criminalmente, apuntó a KATIE DEVLIN con un arma de fuego, color negro y rojo, en un sitio público o en cualquier otro sitio donde hubo alguna persona que pudo sufrir daño, **en la comisión del delito de Robo Agravado**. (Negrillas y subrayado suplidos).

**Art. 5.15 de la Ley de Armas, supra, (CLA2019G0176)**

El referido JES[Ú]S M TORRENCH RODR[Í]GUEZ, actuando en concierto y mutuo acuerdo con ALEJANDRO

MODESTO CASTRO MEL[É]NDEZ Y JUAN EUGENIO LEBR[Ó]N GONZ[Á]LEZ, allá en o para el día 14 de JULIO de 2019, y en ARECIBO, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de ARECIBO, ilegal, voluntaria y criminalmente, apuntó a [Á]NGEL ANTONIO SU[Á]REZ V[É]LEZ con un arma de fuego, color negro y rojo, en un sitio público o en cualquier otro sitio donde hubo alguna persona que pudo sufrir daño, **luego de la comisión de un delito de Robo Agravado**. (Negrillas y subrayado suplidos).

Celebrado el juicio en su fondo, el 16 de diciembre de 2022, el jurado encontró culpable al señor Torrech Rodríguez de todos los cargos imputados en su contra. A saber, quedó probado más allá de duda razonable que el peticionario fue el conductor del vehículo que entró al patio del hogar de la Sra. Katie Devlin y el Sr. Benjamin Devlin (matrimonio Devlin), previo a que sus compañeros asaltantes irrumpieran en la residencia, apuntándoles con un arma de fuego y requiriéndoles dinero. Además, **aquilatada la prueba, el jurado quedó convencido de que, como parte de este asalto, la Sra. Katie Delvin fue golpeada en la cabeza con un arma de fuego por uno de los asaltantes, y que este le arrebató su teléfono móvil de las manos**. A su vez, quedó probado que, en medio del caos del asalto, un amigo del matrimonio Devlin llegó a la residencia y también fue apuntado con un arma de fuego por los asaltantes, quienes salieron corriendo hacia el vehículo conducido por el peticionario.

De esta manera, el jurado evaluó todos los hechos presentados en el pliego acusatorio y rindió su veredicto. Así, el 3 de mayo de 2023, el Tribunal de Primera Instancia (TPI) dictó *Sentencia* en contra del señor Torrech Rodríguez. Mediante esta, condenó al peticionario a cumplir 45 años de

reclusión, desglosados de la manera siguiente: 10 años por cada cargo de robo agravado, concurrentes entre sí; la pena fija de 10 años que establece el Art. 5.04 de la Ley de Armas, *supra*, **duplicada a 20 años** al amparo del Art. 7.03 de la misma Ley; y la mitad de la pena de 5 años para cada cargo del Art. 5.15 de la Ley de Armas, *supra*, en calidad de cooperador, **duplicados a 5 años cada uno**, conforme el Art. 7.03 de la referida ley. Es decir, tras la aplicación del Art. 7.03 de la Ley de Armas, *supra*, la pena de reclusión del señor Torrech Rodríguez aumentó de 27.5 años a 45 años.

Inconforme, el peticionario acudió al Tribunal de Apelaciones (TA). Alegó que se le violentó su debido proceso de ley, consagrado en el Art. II, Secs. 7 y 11 de la Constitución de Puerto Rico, LPRA, Tomo 1, y las Emdas. V y XIV de la Constitución de los Estados Unidos, LPRA, Tomo 1, debido a que las acusaciones por los delitos contemplados en los Arts. 5.04 y 5.15 de la Ley de Armas, *supra*, no incluyeron los elementos necesarios para notificar la posibilidad de que se le duplicaran las penas correspondientes, conforme establece el Art. 7.03 de la misma ley.

Posteriormente, y en desacuerdo con la confirmación de la *Sentencia* apelada, el peticionario presentó el recurso de epígrafe y alegó el mismo señalamiento de error. Añadió que, además del debido proceso de ley, se le infringieron sus derechos a una notificación adecuada de los cargos en su contra y a juicio por jurado. Así las cosas, procedemos a emitir los siguientes pronunciamientos.

## II

### A. Ley de Armas de Puerto Rico

La Ley de Armas, *supra*, fue una legislación especial que regulaba todo lo relativo a la concesión de licencias para la posesión y portación de armas de fuego en Puerto Rico. Así, el propósito principal de su aprobación fue fomentar el manejo responsable por aquellas personas autorizadas para portar y poseer armas, y a su vez, disuadir el uso de estas en la comisión de actos criminales. Exposición de Motivos de la Ley Núm. 404 de 11 de septiembre de 2000. Para ello, el cuerpo estatutario aludido buscaba apercibir a los delincuentes acerca de las serias consecuencias de incurrir en actos delictivos utilizando armas de fuego. Íd., pág. 2.

Entre estas repercusiones, el Art. 5.04 de la referida ley tipificó como delito grave el acto de transportar o portar cualquier arma de fuego sin licencia, y dispuso una pena de reclusión por un término fijo de diez años a toda persona convicta por ello. 25 LPRA sec. 458c. Así, este delito se podía cometer en dos modalidades: (1) cuando una persona portara un arma de fuego sin un permiso de portación o (2) cuando transportara un arma o parte de ella sin su debida licencia. *Pueblo v. Negrón Nazario*, 191 DPR 720, 757-758 (2014). Por otro lado, el Art. 5.15 del mismo estatuto regulaba la conducta proscrita con relación a apuntar o disparar un arma. 25 LPRA sec. 458n. En específico, tipificaba como delito grave, con pena de

reclusión de un término fijo de cinco años, el acto de apuntar un arma de fuego intencionalmente hacia alguna persona, aunque fuese sin malicia o no le causara daño a la persona. Íd.

A su vez, estos artículos contemplaban la variación de la pena fija establecida, dependiendo de la existencia de circunstancias atenuantes o agravantes. En el caso del Art. 5.04, la pena fija podía modificarse dentro de un intervalo de un mínimo de cinco años y un máximo de veinte años.[2] 25 LPRA sec. 458c. En cambio, el Art. 5.15 disponía la posibilidad de reducir hasta un mínimo de un año la pena fija establecida, o aumentarla hasta un límite de diez años.[3] 25 LPRA sec. 458n.

Posteriormente, la Asamblea Legislativa reevaluó el contenido de la Ley de Armas, *supra*, y aprobó la Ley Núm. 137-2004 con el fin de "fortalecer las herramientas al alcance del sistema judicial y corregir lagunas existentes para penalizar severamente al delincuente que hace mal uso de la licencia de armas y sus permisos así como el uso de armas y municiones ilegales". Exposición de Motivos de la Ley Núm. 137 de 3 de junio de 2004, pág. 2. Consecuentemente, enmendó su Art. 7.03 para permitir, entre otras cosas, que

---

[2] Véase, Arts. 55 y 56 del Código Penal, *supra*, 33 LPRA secs. 5098 y 5099. Además, el Art. 5.04 de la Ley de Armas, *supra*, disponía que:

> Se considerará como "atenuante" cuando el arma esté descargada y la persona no tenga municiones a su alcance.
> Se considerará como "agravante" cualquier situación en la que el arma ilegal se utilice en la comisión de cualquier delito o su tentativa. 25 LPRA sec. 485c.

[3] Véase, Arts. 55 y 56 del Código Penal, *supra*, 33 LPRA secs. 5098 y 5099.

la pena dispuesta para el delito imputado pudiese ser duplicada en casos de reincidentes y **cuando existieran daños a terceros por el uso ilegal de un arma**. Informe sobre P. de la C. 4641 de la Comisión de lo Jurídico de la Cámara de Representantes de 24 de mayo de 2004, 7ma Sesión Ordinaria, 14ta Asamblea Legislativa, pág. 10. En específico, este articulado indicaba que **si la persona convicta "usare un arma en la comisión de cualquier delito y como resultado de tal violación alguna persona sufriera daño físico o mental, la pena establecida para el delito se duplicará"**. 25 LPRA sec. 460b.

En *Pueblo v. Concepción Guerra*, 194 DPR 291 (2015), resolvimos que la pena que el Art. 7.03 de la Ley de Armas, *supra*, autoriza duplicar es la pena dispuesta para el delito imputado después de ser contemplados los posibles agravantes y atenuantes, y en ausencia de estos, la duplicación se rige por la pena fija establecida. Para ello, explicamos que:

> **La Ley de Armas, desde su redacción original, tipificó los delitos de los Arts. 5.04 y 5.15**, *supra*, **con sus correspondientes agravantes y atenuantes.** A partir de ese momento, dicho cuerpo normativo sufrió enmiendas con la intención legislativa expresa de "penalizar severamente al delincuente". En aras de articular esta política pública, la Ley Núm. 137-2004 incorporó el Art. 7.03, *supra*, para añadir de manera específica que en casos de reincidentes, entre otros, las penas pueden duplicarse. **Lo anterior nos lleva a concluir que el legislador quiso imponer la penalidad que se provee en el Art. 7.03**, *supra*, **sobre cada delito individual, agravado o atenuado,** pues estos estaban contemplados al momento de incorporarse el mencionado artículo mediante enmienda a la ley.
>
> (Énfasis y negrillas suplidos).
> Íd., pág. 313.

De esta manera, en *Pueblo v. Concepción Guerra*, *supra*, trazamos una línea entre lo que constituye un agravante a las infracciones de los Arts. 5.04 y 5.15 de la Ley de Armas, *supra*, y la duplicación de penas que provee el Art. 7.03 de la misma ley. A saber, los agravantes a estas infracciones, una vez sometidos ante un jurado o aceptados por el acusado, constituían factores a ser considerados por el juez al momento de fijar la pena base dentro de la escala penal ya establecida por el delito tipificado. Por su parte, la duplicidad provista por el Art. 7.03 operaba como un mandato de ley aplicado a la pena ya impuesta por el adjudicador, sin la necesidad de hacer determinaciones de hechos adicionales.

**B. Debido proceso de ley**

El derecho fundamental al debido proceso de ley es uno de estirpe constitucional, consagrado en la Quinta y Decimocuarta Enmienda de la Constitución de los Estados Unidos,[4] al igual que en la Sec. 7 del Art. II de la Constitución de Puerto Rico,[5] que cobija a toda persona que enfrente una acusación criminal en su contra. *Pueblo v. Pagán Rojas et al.*, 187 DPR 465, 478 (2012). En el pasado hemos catalogado la cláusula del debido proceso de ley como

---

[4] La Quinta Enmienda dispone expresamente que "[n]o person shall be… deprived of life, liberty, or property, without due process of law…", y la Decimocuarta Enmienda extiende este derecho a los estados y a Puerto Rico al establecer que "[n]o state shall… deprive any person of life, liberty, or property, without due process of law…". Emdas. V y XIV, Const. EE. UU., LPRA, Tomo 1.

[5] De igual manera, la Sec. 7 del Art. II dispone que "[n]inguna persona será privada de su libertad o propiedad sin debido proceso de ley…" y "[r]econoce como derecho fundamental del ser humano el derecho a la vida, a la libertad y al disfrute de la propiedad…". Art. II, Sec. 7, Const. PR, LPRA, Tomo 1.

la disposición matriz que garantiza los derechos individuales del ciudadano ante la intervención injustificada del Estado. *Pueblo v. Montero Luciano*, 169 DPR 360, 370 (2006). Así, el debido proceso de ley se manifiesta en dos dimensiones: la sustantiva y la procesal. *Pueblo v. Pagán Rojas et al.*, *supra*, págs. 478-479; *Pueblo v. Montero Luciano*, *supra*, pág. 370.

En su vertiente sustantiva, el debido proceso de ley protege los derechos y libertades concedidos a los ciudadanos por la vía constitucional, frente a la formulación de política pública por el Estado. *Pueblo v. Montero Luciano*, *supra*, págs. 370-371. En cambio, la esfera procesal le impone al Estado la obligación de garantizar que cualquier interferencia con los intereses de libertad o propiedad del individuo solamente ocurra mediante un procedimiento justo y equitativo. *Pueblo v. Pagán Rojas et al.*, *supra*, pág. 479; *Pueblo v. Montero Luciano*, *supra*, págs. 370-371. Por consiguiente, el debido proceso de ley en su modalidad procesal comprenderá todas las garantías mínimas que debe proveer el Estado a sus ciudadanos ante cualquier intromisión con su vida, propiedad o libertad. *Pueblo v. Pagán Rojas et al.*, *supra*, pág. 479.

De esta manera, al examinar la validez constitucional de una acción gubernamental por alegada violación al debido proceso en su ámbito procesal, y una vez identificada la existencia de un interés propietario o de libertad, es preciso determinar cuál es el procedimiento exigido. *Pueblo v. Pagán Rojas et al.*, *supra*, pág. 479;

*Pueblo v. Montero Luciano*, *supra*, pág. 371. Si bien la característica medular es que el procedimiento debe ser justo e imparcial, a través de la jurisprudencia hemos identificado componentes básicos del debido procedimiento de ley, tales como: (1) una notificación adecuada del proceso en su contra; (2) que el procedimiento sea celebrado ante un juzgador imparcial; (3) la oportunidad de ser oído y de defenderse; (4) el derecho a contrainterrogar testigos y a examinar evidencia presentada en su contra; (5) el derecho a tener asistencia de abogado; y (6) que la decisión tomada esté basada en evidencia que conste en el récord. *Pueblo v. Pagán Rojas et al.*, *supra*, págs. 479-480; *Pueblo v. Montero Luciano*, *supra*, pág. 371.

### i.   Derecho a recibir una notificación adecuada

En nuestro ordenamiento penal, el derecho que tiene un acusado a una notificación adecuada de los cargos presentados en su contra es de rango constitucional. *Pueblo v. Montero Luciano*, *supra*, pág. 372. Tal protección se desprende de la cláusula de debido proceso de ley, consagrada en la Sexta Enmienda de la Constitución de los Estados Unidos[6] y en la Sec. 11 del Art. II de nuestra Constitución.[7] Así, el debido proceso de ley exige que el

---

[6] La Sexta Enmienda delimita los derechos reconocidos a los acusados en los procedimientos penales a nivel federal, entre ellos que "[i]n all criminal prosecutions, the accused shall enjoy the right… to be informed of the nature and cause of the accusation…". Emda. VI, Const. EE. UU., LPRA, Tomo 1.

[7] En Puerto Rico, la Sec. 11 del Art. II reconoce los derechos del acusado al disponer que "[e]n todos los procesos criminales, el acusado disfrutará del derecho… a ser notificado de la naturaleza y causa de la acusación recibiendo copia de la misma…". Art. II, Sec. 11, Const. PR, LPRA, Tomo 1.

acusado esté adecuadamente informado por el Estado de la naturaleza y extensión del delito que le ha sido imputado. *Pueblo v. Pagán Rojas et al.*, *supra*, pág. 480 citando a *Pueblo v. González Olivencia*, 116 DPR 614, 617-618 (1985); *Pueblo v. Montero Luciano*, *supra*, pág. 372. Para cumplir con este requisito constitucional, el Ministerio Público cumple con este deber de información por medio de la acusación o denuncia. *Pueblo v. Pagán Rojas et al.*, *supra*, pág. 480, citando a *Pueblo v. Montero Luciano*, *supra*, pág. 372.

### a. Acusación

El pliego acusatorio o la acusación es la alegación escrita firmada y jurada por un fiscal mediante la cual se le imputa a una persona la comisión de un delito. 34 LPRA Ap. II, R. 34(a)(2024). En otras palabras, este es el documento que contiene las imputaciones del Ministerio Público contra la persona acusada del delito, y sirve de base y notificación adecuada para los procedimientos posteriores a la vista preliminar, incluyendo la celebración del juicio en su fondo. A.P. Cruz Vélez y otros, *Manual de Litigación Criminal*, 2da. ed. amp., 2025, pág. 321.

En lo pertinente a su contenido, la Regla 35(c) de Procedimiento Criminal dispone que cuando se imputa la comisión de un delito específico, la acusación debe incluir una exposición de todos los hechos esenciales constitutivos del mismo, redactada en lenguaje sencillo, claro y conciso para que pueda entenderla cualquier persona de inteligencia común. *Pueblo v. Pagán Rojas et al.*, *supra*, pág. 481; *Pueblo*

*v. Montero Luciano*, *supra*, pág. 372. **Este lenguaje no incluye presunciones legales o materia de conocimiento judicial, ya que la regla dispone que es innecesario incluir esta información.** 34 LPRA Ap. II, R. 35(c)(2024).

A esos efectos, hemos expresado que para cumplir con una notificación adecuada, no se le exige al Ministerio Público ningún lenguaje estereotipado, técnico o talismánico en su redacción, ni el uso estricto de las palabras dispuestas en el estatuto. *Pueblo v. Montero Luciano*, *supra*, pág. 372. Esto así pues el propósito de la acusación no es que se cumpla mecánicamente con una forma ritual, sino notificar al acusado del delito que se le imputa para que pueda preparar adecuadamente su defensa.[8] *Pueblo v. Pagán Rojas et al.*, *supra*, pág. 481 citando a *Pueblo v. Meléndez Cartagena*, 106 DPR 338, 341 (1977). De esta manera, **la función del pliego acusatorio es crucial para permitir al acusado advenir en conocimiento de los hechos que se le imputan y preparar su defensa conforme a ellos.** *Pueblo v. Vélez Rodríguez*, 186 DPR 621, 629 (2012); *Pueblo v. Pagán Rojas et al.*, *supra*, pág. 481; *Pueblo v. Montero Luciano*, *supra*, pág. 372.

### b. Acumulación de delitos

---

[8] Cónsono con lo establecido en las Constituciones de Estados Unidos y Puerto Rico, nuestra jurisprudencia ha reconocido que, como parte del debido proceso de ley, el derecho de todo acusado a preparar adecuadamente su defensa incluye: (1) el derecho a ser informado de la naturaleza y causa de la acusación; (2) el derecho a representación legal; (3) el derecho a obtener, mediante descubrimiento de prueba, evidencia que pueda favorecerle; (4) conocimiento anticipado de los testigos que serán presentados en juicio; (5) derecho a confrontarse con estos; y (6) tiempo suficiente para prepararse. Véase, *Pueblo v. Rivera Montalvo*, 205 DPR 352 (2020); *Pueblo v. Rodríguez González*, 202 DPR 258 (2019); *Pueblo v. Sanders Cordero*, 199 DPR 827 (2018).

Cabe resaltar que, en aras de lograr una tramitación más rápida y eficaz del proceso criminal, sin dejar de procurar el mejor interés de la sociedad y de la persona imputada de delito, la Regla 37(a) de Procedimiento Criminal contempla la acumulación de delitos, en cargos por separado para cada uno de ellos. J.E. Fontanet Maldonado, *El proceso penal de Puerto Rico, Etapa investigativa e inicial del proceso*, Ed. InterJuris, 2008, t. 1, págs. 312-313. De esta manera, se realiza una pronta y eficaz administración de la justicia, se evitan dilaciones y gastos innecesarios, y se protege al imputado de ser sometido innecesariamente a la celebración de múltiples procesos judiciales. Íd.

Para realizar esta acumulación, es necesario que concurra una de las siguientes circunstancias: (1) que los delitos imputados sean de igual o similar naturaleza; (2) que surjan del mismo acto o transacción; (3) que surjan de dos o más actos o transacciones relacionados entre sí; o (4) que constituyan partes de un plan común. 34 LPRA Ap. II, R. 37 (2024). De esta manera, **las alegaciones de un cargo pueden incorporarse por referencia en los otros**. Íd. A su vez, si bien es cierto que esta regla no le impone al fiscal la obligación de acumular todos los delitos cometidos por un mismo acusado en un solo proceso, hemos señalado que "existe un innegable interés social en la acumulación de causas y la celebración de un solo juicio", más aún cuando nada se ganaría con la separación en términos de las ventajas del individuo imputado. *Pueblo v. Virkler*, 172 DPR 115, 125 (2007); véase además, E.L. Chiesa Aponte, *Derecho Procesal*

*Penal de Puerto Rico y Estados Unidos*, Ed. Forum, 1993, págs. 187-203.

### ii.    Derecho a juicio por jurado

Otra garantía de estirpe constitucional, consagrada en la Sexta Enmienda de la Constitución de Estados Unidos[9] y en la Sec. 11 del Art. II de la de Puerto Rico,[10] es el derecho a un juicio rápido y público por un jurado imparcial. Esta garantía fue reconocida como un derecho fundamental e incorporada a los estados y a Puerto Rico mediante la cláusula del debido proceso de ley consagrada en la Decimocuarta Enmienda. *Pueblo v. Santana Vélez*, *supra*, pág. 65. Además, en la pasada década, el Máximo Foro Federal resolvió que la unanimidad en el veredicto de culpabilidad en procedimientos criminales por delitos graves constituía una protección adicional e intrínseca de este derecho constitucional. *Ramos v. Louisiana*, 590 US 83 (2020). Consecuentemente, en *Pueblo v. Torres Rivera*, 204 DPR 288 (2020), acogimos esa garantía a nuestro ordenamiento jurídico.

La importancia del derecho a un juicio por jurado surge a raíz de que la función esencial del jurado es adjudicar los hechos correspondientes al caso ante su consideración,

---

[9] En específico, la Sexta Enmienda establece que "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed...". Emda. VI, Const. EE. UU., LPRA, Tomo 1.
[10] Nuestra Constitución reconoce que "[e]n todos los procesos criminales, el acusado disfrutará del derecho a un juicio rápido y público…" y que "[e]n los procesos por delito grave el acusado tendrá derecho a que su juicio se ventile ante un jurado imparcial compuesto por doce vecinos del distrito…".(Énfasis y negrillas suplidos). Art. II, Sec. 11, Const. PR, LPRA, Tomo 1.

basada en la evaluación de la prueba presentada y recibida en el juicio. *Pueblo v. Santana Vélez*, *supra*, pág. 65; véase, además, Regla 111 de Procedimiento Criminal, 34 LPRA Ap. II R. 111. Tras deliberar sobre los hechos, y conforme a las instrucciones del juez, el jurado aplica el derecho para emitir el veredicto correspondiente y decidir la culpabilidad o inocencia del acusado. *Pueblo v. Santana Vélez*, *supra*, págs. 65-66 citando a E.L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Colombia, Editorial Forum, 1993, Vol. II, sec. 15.4, pág. 320. Así, por tener la última palabra en cuanto a la responsabilidad criminal del acusado, la encomienda principal de un jurado es juzgar los hechos conforme al estándar probatorio más exigente que conoce nuestro ordenamiento jurídico.

C. *Apprendi* y su progenie

De esta manera, a la luz de las exigencias del debido proceso de ley y el derecho a juicio por jurado, el Tribunal Supremo de los Estados Unidos comenzó a cuestionar los esquemas de sentencias establecidos por los estados tras resolver el caso de *Apprendi*. *Pueblo v. Santana Vélez*, *supra*, pág. 66. A pesar de que la adjudicación de la pena en caso de obtener un veredicto de culpabilidad siempre le había correspondido al juez, en *Apprendi*, **la Corte Suprema federal estableció que cualquier hecho que pudiese aumentar la pena de un delito más allá del máximo estatutario, salvo aquellos relacionados con la reincidencia, tenían que ser**

**admitidos por el acusado o sometidos ante el jurado y probados más allá de duda razonable.**

Esta norma surgió cuando el acusado en el referido caso fue declarado culpable de un cargo de posesión ilegal de armas, cuya pena máxima era de diez años, pero el juez agravó la pena a doce años. Para aumentarla, el juez determinó por preponderancia de prueba que, como cuestión de hecho, el delito se había cometido con el propósito de intimidar por razón de raza. No obstante, este hecho no quedó probado más allá de duda razonable ante un jurado. Por tanto, el Tribunal declaró inconstitucional la sentencia impuesta, pues permitía que el juez impusiera una pena mayor basada en hechos que no habían sido sometidos ante el jurado.

De esta manera, la norma pautada en *Apprendi* fue evolucionando a través de los años, siempre garantizando que cualquier hecho que pudiese aumentar la pena máxima por la convicción de un delito tuviese que ser admitido por el acusado o probado más allá de duda razonable ante un jurado. En *Ring v. Arizona*, 536 US 584 (2002), esta pauta normativa fue extendida a los factores agravantes pues el Tribunal Supremo federal resolvió que estos operaban como elementos adicionales del delito que debían ser determinados por un jurado.[11] Posteriormente, en *Blakely v. Washington*, 542 US

---

[11] En la corte estatal de Arizona, un acusado fue declarado culpable de asesinato estatutario. Acto seguido, el juez determinó que existían dos circunstancias agravantes que no fueron sometidas ante el jurado, a saber, que el crimen fue cometido por motivos pecuniarios y que fue realizado de manera cruel y depravada. Amparado en el estado de derecho vigente, el cual permitía a un juez determinar la existencia de factores agravantes necesarios para imponer la pena de muerte, el adjudicador le impuso esta pena al acusado. Sin embargo, el Tribunal Supremo federal determinó que la sentencia era inconstitucional porque violentaba la Sexta Enmienda.

296 (2004), este mismo foro reiteró que la pena máxima que un juez puede imponer tiene que estar basada estrictamente en los hechos admitidos por el acusado o aquellos que dieron lugar al veredicto de culpabilidad por el jurado, sin la necesidad de realizar determinaciones de hechos adicionales.[12] Luego, en *Booker v. US*, 543 US 220 (2005), la Corte Suprema federal eliminó la naturaleza mandatoria de las guías federales de imposición de penas, pues estas permitían que los jueces de distritos federales determinaran circunstancias agravantes por preponderancia de prueba, al momento de emitir sus sentencias.

Más adelante, en *Cunningham v. California*, 549 US 270 (2007), el Tribunal Supremo federal reiteró la inconstitucionalidad de cualquier esquema de sentencias que permitiera al juez aumentar una pena basada en hechos que no hubiesen sido probados más allá de duda razonable ante un jurado.[13] Después, en *Southern Union Co. v. US*, 567 US

---

[12] En este caso, el acusado se declaró culpable por el delito de secuestro. Según los hechos admitidos en su declaración de culpabilidad y el límite estatutario aplicable, la pena máxima que se le podía imponer era de cincuenta y tres meses de reclusión. Sin embargo, el juez realizó una determinación judicial de que el acusado actuó con crueldad deliberada y le impuso una pena excepcional de noventa años. Por entender que la pena de noventa años estuvo basada en un hecho que no había sido admitido por el acusado ni sometido ante un jurado, la Corte Federal revocó la sentencia apelada. En específico, el Tribunal indicó que:

> [T]he "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. […] In other words, **the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.** When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment,"... and the judge exceeds his proper authority.
> (Énfasis suplido).
> *Blakely v. Washington, supra*, págs. 303-04.

[13] En concreto, el acusado fue declarado culpable por abusar sexualmente de un menor de edad. Los estatutos del estado de California proveían una pena menor de seis años, una intermedia de doce, y una mayor de dieciséis,

343 (2012), la norma de *Apprendi* fue extendida a la imposición de cualquier pena, independientemente fuese de reclusión, muerte o multa.[14] Ulteriormente, en *Alleyne v. US*, 570 US 99 (2013) las penas mínimas obligatorias también quedaron cobijadas por la norma de *Apprendi*.[15] De este modo, la Corte Suprema federal ha sido consistente en revocar toda sentencia en la que, el juez, y solamente el juez, actúe como único árbitro sobre algún hecho que amplíe el efecto punitivo de esta.

### D. *Apprendi* en Puerto Rico

Esta Curia ha adoptado la norma constitucional delineada por *Apprendi*, expresándonos en cuatro ocasiones sobre el tema. La primera vez fue en *Pueblo v. Montero Luciano*, *supra*, caso en donde se le imputó al acusado haber conducido un vehículo de motor en estado de embriaguez, y

---

dependiendo de la existencia de agravantes o atenuantes. En caso de que no existieran estas circunstancias, el juez estaba obligado a imponer la pena intermedia. Sin embargo, el juez le impuso la pena mayor al acusado, basándose en seis factores agravantes que determinó por preponderancia de prueba, y sin la intervención del jurado. Así, la Corte Suprema federal razonó que la sentencia era inconstitucional por razón de que, basada en los hechos que habían sido evaluados por el jurado, el límite estatutario para la imposición de la pena debió haber sido la pena intermedia.

[14] En este caso, una compañía fue declarada culpable de almacenar mercurio líquido sin los permisos pertinente por un periodo de un poco más de dos años. A pesar de que la ley establecía un límite estatutario de $50,000 de multa por cada día de violación, la sentencia emitida dispuso una pena máxima de $38.1 millones basados en 762 días de violación. Tras determinar que el veredicto del jurado no estableció la duración precisa de la violación, la Corte Suprema federal revocó la sentencia.

[15] Aquí, el acusado fue declarado culpable por un cargo de portación de armas, cuya pena mínima era de cinco años, pero podía aumentar a siete años si se exhibía el arma y a diez años si se disparaba. En el juicio, el jurado determinó más allá de duda razonable que el acusado portó un arma durante la comisión de un delito violento, pero nunca determinó que el arma había sido exhibida. Sin embargo, el juez determinó este último hecho por preponderancia de prueba y sentenció al acusado a siete años de reclusión. El Tribunal Supremo revocó la sentencia por entender que determinaciones de hechos adicionales, sin la intervención de un jurado, que aumentaran los mínimos estatutarios de las penas también violentaban la Sexta Enmienda.

este hizo una alegación de culpabilidad que fue aceptada por el TPI. No obstante, luego surgió el hecho de que el acusado había sido convicto previamente por el mismo delito, y el Ministerio Público solicitó que se le impusiera la pena para una segunda convicción. En su dictamen, el TPI determinó que la reincidencia tenía que ser alegada en la acusación, y procedió a establecer la pena para una primera convicción. Sin embargo, el TA revocó el dictamen por entender que la legislación aplicable expresamente disponía que en estos casos no se tenía que alegar la reincidencia para que se tomara en cuenta al momento de emitir una sentencia. De esta manera, analizamos lo resuelto en *Apprendi*, y explicamos que "[l]a norma federal prevaleciente es que los factores que expongan al acusado a una pena mayor tienen que ser alegados en la acusación y probados por el ministerio público más allá de duda razonable". Íd., pág. 384. Por tanto, revocamos al TA y declaramos inconstitucionales los estatutos que eximían al fiscal de alegar la reincidencia en la denuncia por contravenir el debido proceso de ley del acusado.

Luego, en *Pueblo v. Santana Vélez*, *supra*, acogimos oficialmente esta doctrina en nuestro ordenamiento jurídico. En este caso, el jurado declaró culpable al acusado del delito de homicidio involuntario, cuya pena fija era de un año de reclusión en ausencia de atenuantes o agravantes. Sin embargo, el TPI lo sentenció a una pena de tres años de reclusión, sin celebrar una vista para la presentación de prueba sobre agravantes ni realizar una determinación con relación a estos en la sentencia. Al ser apelada la

sentencia, el TA confirmó al foro primario, argumentando que en la celebración del juicio en su fondo se probaron al menos dos circunstancias agravantes que validaban la sentencia impuesta. Es decir, ambos foros concluyeron que procedía imponerle una sentencia mayor al límite estatutario, sin que el acusado aceptara los agravantes y sin que el jurado determinara la existencia de estos más allá de duda razonable. Por esta razón, revocamos al TA y ordenamos al TPI a re-sentenciar al acusado conforme la doctrina de *Apprendi*. En específico, expresamos que:

> La sentencia impuesta al Sr. Santana Vélez es inconstitucional a la luz de la norma adoptada en *Apprendi* y su jurisprudencia interpretativa. La pena máxima que podía imponer el juez con el sólo veredicto del jurado era la pena fija de un (1) año establecid[o] en el artículo 86 del Código Penal de 1974. **Para imponer una pena mayor a esa, se debieron probar más allá de duda razonable y ante el jurado las circunstancias agravantes que el Ministerio Público quisiera imputar.** (Negrillas suplidas).
> Íd., pág. 79.

Posteriormente, en *Pueblo v. Bonilla Peña*, 183 DPR 335 (2011), aplicamos la doctrina de *Apprendi* en el contexto de penas tipificadas en la Ley de Armas, *supra*. En concreto, cinco individuos fueron declarados culpables por un jurado de violar los Arts. 5.04 y 5.07 de la referida ley, y el TPI le impuso una pena carcelaria de doscientos cuatro años a cada uno. Inconformes, los acusados invocaron lo resuelto en *Pueblo v. Santana Vélez*, *supra*, al sostener que el TPI tomó en cuenta agravantes que no estuvieron ante la consideración del jurado para imponerle sentencias mayores a los términos fijos consignados en ley. Así, devolvimos el caso a los foros inferiores para que las sentencias de los

convictos reflejaran las exigencias jurisprudenciales esbozadas, y sostuvimos lo siguiente:

> De acuerdo con nuestra jurisprudencia y la del Tribunal Supremo federal, **era al jurado - y únicamente al jurado - a quien le correspondía determinar, más allá de duda razonable, si había factores agravantes** en la violación de los Arts. 5.04 y 5.07 de la Ley de Armas **que ameritaran el incremento de la pena contemplada por el límite estatutario penal.** Ese análisis por parte del jurado no se dio. (Negrillas suplidas).
> Íd., pág. 353.

Finalmente, la última vez que analizamos la doctrina de *Apprendi* y su progenie fue en *Pueblo v. Pagán Rojas et al.*, *supra*. En este caso atendimos tres recursos consolidados mediante los cuales cada acusado sostuvo que los agravantes imputados en su contra no debían ser desglosados en el pliego acusatorio, ya que atentaban en contra de su derecho fundamental a la presunción de inocencia y a ser juzgados ante un jurado imparcial. Con miras a preservar los derechos del acusado, creamos un mecanismo dual en el cual el Ministerio Público pudiese presentar dos pliegos acusatorios, uno para el delito base y otro para sus agravantes, concediéndole al adjudicador amplia discreción para decidir el momento más apropiado para someter estos ante el jurado. Así, reiteramos una vez más la doctrina de *Apprendi* y su progenie "a los efectos de que cualquier hecho que aumente la pena del acusado, excepto aquellos relativos a convicciones anteriores, tienen que ser sometidos a la consideración del jurado y probados más allá de duda razonable." Íd., pág. 490. Además, nos expresamos sobre la posibilidad de que surgieran hechos durante el

desfile de prueba que podrían constituir agravantes sin que el jurado estuviese consciente de ello:

> Es indudable que, **en ocasiones, existen hechos que están íntimamente ligados a la comisión del delito y que, a la misma vez, podrían constituir agravantes para efectos de la pena**, por lo que, en términos prácticos habrá casos en los que se estará presentando prueba sobre dichos agravantes durante el juicio, sin necesidad de pasar prueba sobre los mismos en una vista posterior sobre agravantes. **Dentro de esas circunstancias, no se le estaría ocasionando un perjuicio indebido al acusado al recibir esta evidencia como parte del juicio, pues el jurado no estará enterado de la naturaleza de esos hechos en calidad de agravantes, sino como elementos del delito.** (Negrillas suplidas).
> Íd., págs. 490-491.

Así las cosas, desde que esta Curia adoptó la doctrina de *Apprendi* y su progenie, **nuestros dictámenes han garantizado el debido proceso de ley y derecho a juicio por jurado, a los efectos de garantizar que cualquier alteración que aumente la pena máxima por la convicción de un delito, esté basada en hechos que hayan sido admitidos por el acusado o probados más allá de duda razonable ante un jurado.** Cuando se ha resuelto algo distinto, no hemos titubeado en revocar sentencias o declarar la inconstitucionalidad de aquellas disposiciones que promuevan lo contrario.

### III

Tal y como expone la *Opinión* mayoritaria, tras la celebración del juicio en su fondo, un jurado imparcial declaró culpable al señor Torrech Rodríguez del delito de robo agravado en dos de sus modalidades y por cuatro infracciones a la Ley de Armas, *supra*. En específico, el jurado determinó que fue probado más allá de duda razonable: (1) que el peticionario fue el conductor de un vehículo que

irrumpió en una residencia; (2) que este esperó en el automóvil mientras sus compañeros asaltaban al matrimonio Devlin a mano armada; (3) **que la Sra. Katie Devlin <u>fue golpeada en la cabeza con un arma de fuego mientras se le arrebataba su teléfono móvil de las manos</u>**; y (4) que un amigo del matrimonio llegó a la residencia durante el asalto y también fue apuntado con un arma de fuego por los asaltantes. Es decir, estos hechos fueron objeto de deliberación por los miembros del jurado y, conforme al estándar probatorio más exigente que conoce nuestro ordenamiento jurídico, emitieron un veredicto de culpabilidad en contra del peticionario.

Basado en estos hechos previamente adjudicados por el jurado, el juez del TPI condenó al peticionario a cumplir las penas por ambos cargos de robo agravado en calidad de cooperador (10 años por cada uno, concurrentes entre sí), la infracción al Art. 5.04 (10 años), y los tres cargos por violación al Art. 5.15 de la Ley de Armas, *supra* (2.5 años por cada uno, tras considerar el atenuante de que actuó como cooperador). Una vez evaluó las circunstancias agravantes y atenuantes de los delitos cometidos para así fijar la pena base dentro de la escala penal ya establecida, el juez aplicó la duplicidad de penas provista por el Art. 7.03 por la Ley de Armas, *supra*. Cónsono con lo resuelto en *Pueblo v. Concepción Guerra*, *supra*, **el adjudicador cumplió con el mandato legislativo de la Ley de Armas, *supra*, y duplicó las penas sobre cada delito individual, agravado o atenuado,**

**basado estrictamente en los hechos que fueron probados más allá de duda razonable ante el jurado**.

Inconforme, el peticionario arguyó en su recurso que la duplicación de las penas aplicada al amparo del Art. 7.03 de la Ley de Armas, *supra*, es improcedente por violentar su derecho a una notificación adecuada y a juicio por jurado, al igual que es contraria a los precedentes establecidos por *Apprendi* y su progenie. En específico, sostuvo que para duplicar las penas, el Ministerio Público debió alegar expresamente en las acusaciones correspondientes a los delitos de los Arts. 5.04 y 5.15 de la Ley de Armas, *supra*, que durante la comisión de un delito en el cual se utilizó un arma de fuego, un tercero sufrió daño físico o emocional. Ante ello, el peticionario indicó que la omisión de notificar este hecho infringió en su capacidad de preparar adecuadamente su defensa, y que conforme a *Apprendi* y su progenie, estos hechos no fueron objeto de determinación por el jurado. Por tanto, planteó que el veredicto de culpabilidad por las infracciones a la Ley de Armas, *supra*, solo autorizaba la pena fija correspondiente a cada una.

Acogiendo los planteamientos del peticionario, la *Opinión* mayoritaria resuelve que la duplicidad de la pena impuesta en virtud del Art. 7.03 de la Ley de Armas, *supra*, es inconstitucional. Para llegar a esta conclusión, mis compañeros de estrado examinaron el Art. 7.03 del referido estatuto y concluyeron que los supuestos para duplicar la pena, a saber, **que se usó un arma en la comisión del delito de robo agravado, y que como resultado de tal violación, la**

**Sra. Katie Devlin sufrió un daño físico**, constituyen hechos que, por alterar el marco punitivo autorizado por el veredicto del jurado, adquieren rango constitucional, y consecuentemente requieren (1) notificación formal, específica y oportuna al acusado de los hechos que activan la duplicación de la pena; (2) la adjudicación de dichos hechos por el jurado, bajo el estándar de prueba más allá de duda razonable. Véase pág. 34 de *Opinión* mayoritaria. Así, resolvieron que como los hechos activadores de la duplicidad de la pena no fueron incluidos expresamente en las acusaciones ni en los pliegos de agravantes correspondientes a los delitos de los Arts. 5.04 y 5.15 de la Ley de Armas, *supra*, se le violentó el derecho al debido proceso de ley del peticionario.

**El problema con este análisis es que, con miras a exigir un formalismo vacío que en nada incidió sobre la estrategia de defensa del peticionario, la mayoría pasa por alto que los hechos activadores de la duplicidad de penas al amparo del Art. 7.03 de la Ley de Armas**, *supra*, **sí fueron alegados en el pliego acusatorio, y posteriormente, probados más allá de duda razonable ante el jurado.** En el caso ante nos, el jurado evaluó seis acusaciones en contra del señor Torrech Rodríguez. Cuatro de estas fueron por infracciones a la Ley de Armas, *supra*, mediante la cual se especificó expresamente que un arma de fuego fue utilizada en "**la comisión del delito de robo agravado**". La quinta acusación fue por el delito de robo agravado, tipificado en el Art. 190(c) del Código Penal, mediante la cual se especificó que fue cometido

**"infligiendo daño físico a la víctima mediante golpe en la cabeza con un arma de fuego".** De este modo, al tratar de delitos que surgieron del mismo acto, **el Ministerio Público acumuló los delitos en virtud de la Regla 37(a) de Procedimiento Criminal, e incorporó por referencia las alegaciones del delito de robo agravado a las acusaciones por infracciones a la Ley de Armas**, *supra*.

De esta manera, al encontrar culpable al peticionario por todos los delitos imputados, los supuestos del Art. 7.03 de la Ley de Armas, *supra*, fueron adjudicados por el jurado conforme al estándar probatorio más exigente que conoce nuestro ordenamiento. Es decir, los hechos que dieron lugar a la duplicidad de las penas, a saber, que se usó un arma en la comisión del delito de robo agravado y que, como resultado, la Sra. Katie Devlin sufrió daño físico, fueron notificados en el pliego acusatorio para efectos de una notificación adecuada, y posteriormente fueron adjudicados por el jurado. Por lo tanto, el juez no tuvo que considerar hechos ni circunstancias adicionales para imponer la duplicación de las penas. Simplemente, evaluó el veredicto del jurado, consideró las circunstancias atenuantes y agravantes en la comisión de cada delito, y luego aplicó el Art. 7.03 de la Ley de Armas, *supra*, tal y como lo pautamos en *Pueblo v. Concepción Guerra*, *supra*.

Conviene recordar que la premisa fundamental que subyace a la doctrina de *Apprendi* y su progenie es que toda circunstancia fáctica que aumente la pena máxima del delito, por encima del límite autorizado por el veredicto del

jurado, debe ser sometida a ese cuerpo y probada más allá de duda razonable. En cuanto al límite estatutario al momento de emitir una sentencia, hemos expresado que este constituye la pena máxima que puede imponer el juez con el solo veredicto de culpabilidad del jurado, sin la necesidad de determinar hechos adicionales. *Pueblo v. Santana Vélez*, *supra*, pág. 71. Por lo tanto, el vicio constitucional atendido por *Apprendi* y su progenie reside en que el juez, y solamente el juez, actúe como único árbitro sobre algún hecho adicional que amplíe el efecto punitivo de la sentencia. **Esa simplemente no es la situación que tenemos ante nuestra consideración, más aún cuando el Art. 7.03 no da margen para que el juez haga determinaciones de hechos adicionales, sino que provee para la duplicación de penas basada en hechos previamente adjudicados por el jurado.**

En concreto, somos del criterio que la *Opinión* mayoritaria erra al utilizar el linaje jurisprudencial esbozado por *Apprendi* y su progenie como pretexto para crear una exigencia de consignación formal a los efectos de que cualquier hecho que pueda aumentar el límite estatutario de la pena, no solo tenga que ser notificado al acusado y adjudicado por el jurado, sino que también tenga que constar en cada instrumento procesal específicamente vinculado al cargo cuya pena se agrava. Es decir, al exigir que los hechos activadores del Art. 7.03 de la Ley de Armas, *supra*, se consignen específica y separadamente en los pliegos de los delitos de armas, se crea un formalismo que permite a un acusado cuyos hechos fueron íntegramente adjudicados por el

jurado, escapar una pena duplicada por razón de un alegado "defecto" en la redacción del pliego, sin que haya causado perjuicio real alguno a su defensa. No podemos avalar este resultado, pues su efecto es convertir el derecho a una notificación adecuada en un tecnicismo procesal al servicio de la impunidad. A su vez, queda inoficiosa parte de la Regla 37(a) de Procedimiento Criminal, ya que en el contexto de acumulación de delitos en un mismo proceso judicial, la incorporación de alegaciones por referencia de un cargo a otro no satisfacería el requisito de notificación adecuada.

De esta manera, reiteramos que el hilo central de *Apprendi* y su progenie siempre ha sido el mismo: **el límite estatutario es aquella pena máxima que el juez puede imponer con el solo veredicto de culpabilidad del jurado, sin la necesidad de determinar hechos adicionales**. Al aplicar esta doctrina, la conclusión es que el señor Torrech Rodríguez recibió exactamente la protección constitucional que *Apprendi* y su progenie garantizan. A saber, fue notificado de los hechos imputados en su contra mediante una serie de acusaciones; tuvo la oportunidad de contrainterrogar testigos, presentar prueba y dirigir su estrategia de defensa respecto a esos hechos; y tras la celebración de un juicio en su fondo, fue el jurado —no el juez— quien encontró estos hechos probados más allá de duda razonable. Así, los supuestos fácticos que activaron la duplicidad de penas al amparo del Art. 7.03 de la Ley de Armas, *supra*, fueron probados más allá de duda razonable ante el jurado, en el

marco de la acusación por robo agravado que se procesó conjuntamente con los delitos de armas.

Por los fundamentos antes expuestos, disiento respetuosamente del curso de acción adoptado y confirmaría la determinación del Tribunal de Apelaciones.


                                        Raúl A. Candelario López
                                              Juez Asociado